# THE WESTERN MARYLAND RAILROAD COMPANY *vs.* EDWARD LYNCH.

*Construction of Contract by a Railway Company Giving Right to Free Transportation.*

A railroad company, whose line then extended between certain designated points in Maryland, covenanted that plaintiff should be entitled to free transportation upon the trains of the company in consideration of the grant by him to the company of certain water rights. Afterwards the company, under the authority of an Act of the Legislature, leased another road in Pennsylvania which was operated in connection with the Maryland line. *Held*, that under this contract the plaintiff was not entitled to free transportation upon the road in Pennsylvania.

Appeal from the Court of Common Pleas. This was an action of trespass *vi et armis* brought by the appellee against the appellant to recover damages for an alleged wrongful expulsion from one of the defendants' trains in March, 1888.

At the trial the plaintiff offered in evidence a contract between himself and the defendant, dated June 6, 1871, which provided that "in consideration of the covenants hereinafter contained on the part of said company, the parties of the first part hereby grant, bargain and sell unto the said company, its successors and assigns, the right and privilege to conduct the water from a spring branch running through the land of the said Edward Lynch, in a northwest direction across the Western Maryland Railroad track, to a water-tank erected on the west edge of the main track of said railroad, near the city of Westminster, &c. To have and to hold such easement, with the right to enter for repairs as far as may be necessary to said company, its successors and assigns, forever. And in consideration of the premises, the said company, for itself, its successors and assigns, covenants that the said Edward Lynch, his heirs and

assigns, of the said land in which the said pipes are placed, shall be entitled forever hereafter to ride without charge upon the trains of the said company, its successors and assigns; provided, however, that if the title shall be vested in more than one person at any one time, then one person only of such alienees or possessors of said land, to be designated by them, shall be entitled so to ride free of charge. And the said company, for itself, its successors and assigns, covenants from time to time to issue passes, to evidence the right of such free use of its trains."

At the time this contract was made the defendant was authorized by its charter to construct a railroad in Maryland, between Baltimore and Williamsport. A charter was granted by the State of Maryland in 1878, under which a line of railroad running from Edgemont, on the main line of the Western Maryland Railroad, to the Pennsylvania line, a distance of three and three one-hundredths of a mile, was constructed in 1880. The company was known as the Baltimore and Cumberland Valley Extension Railroad Company. The charter of the Baltimore and Cumberland Valley Railroad, granted by the State of Pennsylvania, was granted in 1878, under which a railroad from the Maryland line, at the terminus of the Baltimore and Cumberland Valley Extension Railroad to Waynesborough, was constructed in 1880 by that company, a distance of four and five one-hundredths of a mile. The road was extended in 1880, under a Pennsylvania charter, westward, from Waynesborough to Shippensburg, in Pennsylvania. The road from Edgemont to the Pennsylvania line connected with the Baltimore and Cumberland Valley Railroad in Pennsylvania, so that cars and trains of the Western Maryland Railroad Company passed from the main line of the Western Maryland Railroad Company over the Baltimore and Cumberland Valley Railroad in Pennsylvania, and the Baltimore, Cumberland Valley Extension Railroad in Maryland, forming a continuous track with the track of the Western Maryland Railroad Company. The Cumberland Valley Railroad was leased by the defend-

ant company under the authority conferred by the Act of 1880, ch. 78.

The defendant company always supplied Lynch with a pass or a ticket to evidence his right to the free use of its trains, according to the terms of its contract, until the spring of 1887, when the Inter-State Commerce Act went into effect. These passes were marked good on the Baltimore and Cumberland Valley Railroad and the Baltimore and Harrisburg Railway, another leased road, lying mostly in Pennsylvania, and constructed by companies chartered by that State. After the passage of the Inter-State Commerce Act the president of the defendant company wrote to Lynch, stating his belief that his contract with the company did not entitle him to ride free upon the Baltimore and Cumberland Valley Railroad or the Baltimore and Harrisburg Railway, and that to issue him passes over those roads, permitting him to travel free from State to State, would be a violation of that Act. He concluded by requesting a return of the pass then held by Lynch, so that one might be substituted, so made out, as to conform to those views. Lynch declined to return his pass, contending that he was entitled by his contract with the company to travel free over any and all roads over which the company might run *trains*. In October of that same year Lynch having lost his pass, and it having been returned to the office of the railroad company, he was supplied with one in return, marked good between Baltimore and Williamsport, the entire main line of the company, but not good on the two leased roads above mentioned. That pass Lynch declined to accept, as well as a similar one sent him at the beginning of the year 1888, over two months before he was ejected from the train. In each instance he set up his rights under his contract previously set forth. In order to avoid trouble with him, in consequence of his continuing to travel without his pass, special orders were issued to cover his case. By those orders he was allowed to travel without a pass over all the main line of the company's road, but not on the leased roads in Pennsylvania.

The plaintiff admitted that he was warned that if he attempted to travel upon those roads, he would be required to pay fare, and would be ejected from the train if he refused to pay it. He admitted also that he knew the rules of the company required the conductor to eject every passenger attempting to travel without a ticket or a pass, and refusing to pay his fare. He further testified that at the time he was put off the train, he was upon the Baltimore and Cumberland Valley Railroad, and without either a ticket or a pass ; that he produced a copy of his contract with the company as the evidence of his right to travel ; that the conductor refused to accept this as evidence, demanded his fare, and upon his refusal to pay, ejected him from the train.

The Court below (HARLAN, C. J.), instructed the jury that upon the above-mentioned facts the plaintiff was entitled to recover. The defendant offered four prayers, all of which were rejected. By the first and second of these prayers, the Court was asked to instruct the jury that even if Lynch could claim the right under his contract with the Western Maryland Railroad, to travel free on trains of that company, when running upon the Baltimore and Cumberland Valley Railroad and the Baltimore and Harrisburg Railway, he was not entitled so to travel without a pass or ticket, to evidence his right to the conductor, and that in failing to produce such evidence, required both by the rules of the company and the plain words of his contract itself, as the only proper evidence to the conductor, and in refusing to pay fare when demanded, he constituted himself a trespasser and wrongdoer, and was legally ejected from the train. By the third and fourth prayers of the appellant, the Court was asked to instruct the jury that by the proper construction of the company's contract with Lynch, he could not claim the right to free user of the company's trains when running upon the leased roads in Pennsylvania, which the company had no power under its charter to lease at the time of the making of said contract.

The jury returned a verdict for the plaintiff for $1,500, and from the judgment thereon the defendant appealed.

The cause was argued before BRYAN, MCSHERRY, FOWLER, BRISCOE and ROBERTS, JJ.

*Charles Marshall* and *J. Markham Marshall*, for the appellant.

1. The conductor was justified in ejecting Lynch from the train, because the latter was attempting to travel without any evidence of his right to the transportation. If under his contract he was entitled to free transportation on the leased roads it was a breach of contract by the defendant to deny him a pass on those roads, and his remedy was an action on the contract.

2. The law pertaining to this particular contract, and the intention of the parties thereto are to be gathered from the appellant's charter, and the general laws applicable to it, at the time this contract was made. This principle is stated with great clearness in the case of *The Morris and Essex Railroad Company* v. *The Sussex Railroad Company*, 20 N. J. Eq. 542, where it is held that corporations are presumed to contract within the existing powers of their charters, and where general words are used in a contract between them admitting of a double construction, they must be construed consistently with the scope and powers of the charter. In its charter and the general laws applicable to it are contained the measure of a corporation's powers to contract, and a contract manifestly beyond those powers is *ultra vires* and void. *Green Bay, &c., R. Co.* v. *Union, &c., Co.* 107 U. S. 100; *Canada Southern R. Co.* v. *Gebhard et al., Exrs.,* 109 U. S. 537; *Glenn* v. *Liggett,* 135 U. S. 533; *Pa., Del. & Md. Steam, &c., Co.* v. *Dandridge,* 8 G. & J. 155; *Horace Abbott et al.* v. *Baltimore Steam, &c., Co.* 1 Md. Ch. 542.

It is clear from these authorities that the general words "trains of said company," employed in the contract must be construed consistently with the scope and powers of the charter of the appellant, as it existed when the contract

was made.    The appellee lays stress upon the fact that the appellant itself admitted his right to ride upon the trains of the company when running upon the leased roads in Pennsylvania, by supplying him with a pass over those roads between the years 1880 and 1887.    But there is no principle better settled than that where the terms of a contract are plain, certain and free from ambiguity, a Court cannot be aided in its construction by the acts of the parties thereunder or by the construction they may have placed upon it.    *Ringgold* v. *Ringgold*, 1 H. & G. 74, &c.; *Hutchins* v. *Dixon Exr.*, 11 Md. 29; *Varnum* v. *Thurston*, 17 Md. 470; *Stockham* v. *Stockham*, 32 Md. 196.

*D. N. Henning* (with whom was *Harry M. Clabaugh* on the brief), for the appellee.

The contract was necessary to and in the usual course of defendant's business and was one which it therefore was empowered to enter into.    *Plank Road* v. *Young*, 12 Md. 476; *Morris R. Co.* v. *R. R. Co.*, 29 N. J., Equity.    The grant of the easement and the consideration therefor are in perpetuity, the language of the contract evidences care in guarding the respective rights of the parties thereto, and the terms used technical and must be taken in their technical senses. *Md. Coal Co.* v. *Cumb. R. R.*, 41 Md. 352.    The contract was to operate during the whole term of the demise and the right of the appellee attached according to the condition of the road of the appellant, either present or future, in perpetuity.    *Crocker* v. *City of Buffalo*, 90 N. Y. 351.    The right of the appellee was at the date of the deed necessarily confined to the trains of the appellant, as then operated, but under the contract necessarily expanded with the extended operation of the trains of the company.    It was clearly in the power and authority of the defendant company to contract to do what it might have the legal power to do, which power was evidently contemplated, and which it at the time the cause of action arose did have the undoubted power to do.    *Morris R. Co.* v. *R. R. Co.*, 29 N. J., Equity;

*Ry. Co.* v. *McCarthy*, 96 U. S. R. 266.     The action primarily grows out of the breach of covenant entitling the appellee to ride on the appellant's trains and not on the breach to issue ticket or passes.     The appellant could not make a rule for its own convenience and then by its refusal to comply with its own rule deprive the appellee of the fruits of his contract.

BRYAN, J., delivered the opinion of the Court.

In the year 1871 Edward Lynch granted to the Western Maryland Railroad Company the right to use the water of certain spring upon his land, and in consideration of this grant the railroad company covenanted that he should be entitled forever thereafter to travel without charge upon the trains of the company.   Since the making of this contract the railroad company, under authority from the Legislature, has built a track extending from Edgemont, a point on its main line, to the boundary of Pennsylvania; and it has also, under the authority of the Act of 1880, chapter 78, leased the Baltimore and Cumberland Valley Railroad, which lies within the State of Pennsylvania.   The question in this case is whether Lynch, by virtue of his contract, has acquired the right of free travel on trains running over the railroad in Pennsylvania.

The contract related to two certain definite and clearly described subjects.   There is no obscurity or ambiguity about the rights which were acquired on each side.   Lynch was to have free transportation in the trains of the railroad company; that is to say, whensoever and wheresoever they might be run on its tracks.   Looking at the contract as it was viewed by the parties at the time when it was made and under the circumstances then existing, it is impossible to make any mistake about its meaning.   The right to be enjoyed in the trains was as clearly understood as the right to use the water.   The railroad track at that time extended, or was authorized to extend, from Baltimore to Williamsport, being entirely within the State of Maryland.   If this track

had been described by its *termini*, and it had been stated that the trains in which Lynch was to travel were to be run only on this track, the intention of the parties would have been stated in minute detail.    But the statement would not have been more clear than it was in the instrument which was executed.    When a contract is made about an interest distinctly and specifically identified, it would require very extraordinary circumstances to justify a construction which should apply it to another and different object.    Whatever may possibly arise in the infinite variety and complexity of human affairs, it is very safe to say that nothing of this kind exists in the present case.    It is nothing to the purpose that the railroad has acquired the corporate capacity to have more extended tracks than it had at the time of the contract.    The contract was for what it could then give; and not for what it might in the future acquire the power to give. Suppose in the course of events it should extend its track to California, would it be argued that it was bound to furnish to Lynch transportation the whole distance?

Lynch was travelling in the cars of the Western Maryland Railroad on the Baltimore and Cumberland · Valley Road in the State of Pennsylvania, and was ejected without unnecessary force because he refused to pay fare.    He brought suit against the Western Maryland Railroad Company and recovered a judgment.    The railroad company had refused him a pass over this portion of its road.    We leave out of view many questions which were argued at the bar, among others the effect of the Inter-State Commerce Law on the relations of the parties, and rest our decision of this case on the construction of the contract which we have stated.    That must defeat a recovery by the plaintiff.

*Judgment reversed.*