## JOSEPH M. SIMMONS *vs.* JOHN HAAS.

*Letters as evidence—Admissible Evidence—Remote special damage from Non-performance of Contract—Special plea alleging such Damage necessary—When Letters are not Admissible in evidence—Admission of parties as evidence—Recoupment—Measure of Damages.*

Letters of the adverse party, are admitted in evidence against those writing them, as admissions against their interest, under the condition that they refer to the matter in controversy, and the whole admission is to be taken together; which generally requires the prior letter to be produced or accounted for, before the answer can be properly admitted in evidence.

In an action against three co-defendants, two of whom died pending the action, the surviving plaintiff having proven by F., a competent witness, that being in the employment of the plaintiffs, he called upon S., the surviving defendant, to pay the sum of $1432.37, due to the plaintiffs for coal, which had been shipped by them to the firm of which S. was a member, and that S. then proposed that if the plaintiffs would ship to his firm a certain amount of coal at a price specified, said firm would pay therefor, and also the plaintiffs' bill of $1432.37; and further, that no one was present but the witness and S. when said proposition was made; then offered to prove by H., the surviving plaintiff, that the witness, F., communicated to him the said proposition of S., and that the firm of which H. was a member, accepted the proposition, and in pursuance thereof, shipped the amount of coal specified, to the firm of which S. was a member. HELD:

That the evidence of H. was admissible, being within the rule laid down in *Hardy & Bros. vs. Chesapeake Bank*, 51 *Md.*, 598.

The contract on the part of the plaintiffs was to ship to the defendants "from Sunbury a certain quantity of coal as soon as possible, at their lowest price." In a suit to recover for coal shipped to the defendants, the declaration contained only the money counts, with an account annexed of the coal sold and delivered, and money advanced. Among other pleas, the defendants pleaded special

damages by reason of the non-performance of the plaintiffs' contract to deliver coal, &c. Subsequently this plea was withdrawn. At the trial the defendants offered to show that they had sustained loss in consequence of the plaintiffs' non-compliance with their contract, and sought to recoup the same from the plaintiffs' claim— such loss arising from the inability of the defendants to consummate sales of coal in consequence of the plaintiffs' failure. HELD:

That such loss was a remote special damage, which required a special plea, to enable the plaintiffs to meet that defence; and as the special plea alleging such damage had been withdrawn, whereby the plaintiffs had no notice that such an issue would be raised, the defendants could not be allowed to enter into such inquiry.

Letters, not in response to any emanating from the adverse party, are *ex parte* declarations of the party offering them in his own favor, and are not admissible in evidence.

In an action to recover for a certain amount of coal shipped by the plaintiffs to the defendants, the former offered in evidence an account showing the amount of coal shipped in September, 1868, and the price charged therefor. And in connection with this account offered in evidence, the following letter, dated the 3rd of October, 1868, from the defendants to the plaintiffs: "Gents:— Your bill received. We will send you a check next week, after we make some collections. Hurry us down some coal fast as possible. We must have a proportion of sizes; not all No. 1, but egg and stove. You have sent very little egg." HELD:

That the letter was *prima facie* an admission of the correctness of the account, until otherwise proved by the defendants, and its identity being established, the promise to send a check, was equivalent to a promise to pay.

In an action to recover for an amount of coal shipped by the plaintiffs to the defendants, under an order or contract, dated the 5th of September, 1868, the defendants claimed by way of recoupment, an allowance for damages accruing from failure of the plaintiffs to deliver coal under said order, as also under a subsequent order of the 15th of September, 1868. The plaintiffs insisted that the right of recoupment should be confined to the damages resulting from the non-fulfillment of the contract of the 5th of September, 1868. HELD:

That if the first contract was merged in the second, the jury might allow the defendants, by way of deduction, the damage, if any,

they might find the defendants sustained by the non-delivery of so much of the thousand tons ordered on the 15th of September, 1868, as was not delivered; but that if the contract of the 5th of September, 1868, for eight boat loads, was a separate and distinct contract, from that for a thousand tons, they could only deduct from the price of so much as was delivered under the contract of the 5th of September, such damage, if any, they might find the defendants sustained by the non-delivery of the whole of the eight boat loads—In other words, that the damages, sustained by the breach of a second distinct contract, were not to be deducted from the balance due on an entire, independent contract.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court. The defendant took six exceptions—five to rulings in respect of evidence, which are sufficiently set out in the opinion of the Court; and the sixth to instructions granted or refused.

*Sixth Exception.*—The plaintiff offered the two following prayers:

1. If the jury believe that the account referred to in the letter of J. M. Simmons & Company, dated October, 3rd, 1868, was the account of John Haas & Company, charging $1432.37 for the coal, which had been shipped in September, 1868, then said letter is an admission of the correctness of said account, as to the amount delivered and the price charged therefor.

4. The defendant is not entitled in this suit to any deduction from the amount due for the coal shipped under the order dated September 5th, 1868, on account of the failure of John Haas & Company, to ship the additional quantity ordered by the letter of J. M. Simmons & Company, dated September 15th, 1868.

The Court, (DOBBIN, J.,) granted the first prayer of the plaintiff, and the fourth with the following modification:

Unless the jury shall find from the correspondence and the testimony of Mr. Haas, that the contract of the 15th of

September, was understood between them not to be a new contract for 1000 tons additional, but an enlargement of the contract of the 5th of September, so as to include the 8 boat loads, thereby contracted for as part of said 1000 tons, in which event they may deduct from the price of what was delivered under the contract, the damage, if any, they may find the defendant's firm sustained by the non-delivery of so much of the 1000 tons as they may find was not delivered. But if they shall find that the contract of the 5th of September, for 8 boat loads was a separate and distinct contract from the contract for 1000 tons, then they can only deduct from the price of so much as was delivered under the contract of the 5th of September, such damage if any, as they may find the defendant's firm sustained by the non-delivery of the whole of the 8 boat loads. In any finding of damage to the defendant's firm for the non-delivery of coal contracted for, the measure of such damage is the difference between the contract price and the market price of like coal at Sunbury, at the time at which it should have been delivered under the contract.

The defendant prayed the following instructions to the jury :

1. That if the jury shall find from the evidence, that the firm of John Haas & Co., contracted to deliver certain quantities of coal, at certain prices, to Robert G. Rieman, Joseph M. Simmons and Alfred Poor, trading as Joseph M. Simmons & Company, and that the quantities of coal, so contracted to be delivered by the said John Haas & Co., to the said Joseph M. Simmons & Company, were not respectively so delivered by the said Haas & Co., and that said non-delivery of said respective quantities was not caused by any act or default of the said firm of Joseph M. Simmons & Company, or of any one of them, then that the plaintiff is not entitled to recover, under any count of his said declaration, any sum of money

whatever from the said defendant, even though the jury should find that the said Haas & Co., did deliver to the said Joseph M. Simmons & Company, part of the respective quantities of coal, so agreed to be delivered, unless the jury shall find that some new contract or contracts or arrangement, was made by the said Haas & Co. and the said Simmons & Co., in reference to said quantities of coal.

2. That if the jury shall find from the evidence, that the firm of John Haas & Co., contracted to deliver certain quantities of coal, at certain prices, to Robert G. Rieman, Joseph M. Simmons and Alfred Poor, trading as Joseph M. Simmons & Company, and that the quantities of coal, so contracted to be delivered by the said firm of John Haas & Co., to the said Joseph M. Simmons & Company, were not so delivered by the said firm of John Haas & Co., and that said non-delivery of said respective quantities was not caused by act or default of said firm of Joseph M. Simmons & Company, or any of said firm, but that certain quantities of coal were received by the said J. M. Simmons from said Haas & Co., then that the jury, in making up its verdict, may deduct from its estimate of the value of the coal so delivered, the amount of damages, if any, which the jury may find from the evidence was occasioned to the firm of Joseph M. Simmons & Company, by reason of the failure of the said firm of Haas & Co., to deliver to the said firm of Joseph M. Simmons & Company, the whole amount of said coal so contracted to be delivered to said firm, and that the measure of such damage is the difference between the price agreed to be paid by said J. M. Simmons & Company, for said respective quantities of coal, and the market price of said coal in Sunbury, at the time or times when said coal ought to have been delivered to the said J. M. Simmons & Co. at Sunbury, if it had been delivered according to the terms of the original contracts relating thereto, or under any

extension of the time or times agreed on for such delivery or deliveries, if the jury shall find that such extension or extensions of time were agreed on or assented to by the said John Haas & Co. and the said J. M. Simmons & Co.

The Court rejected the first prayer of the defendant, and granted his second prayer. To the granting of the first prayer of the plaintiff, and his fourth prayer with a modification, and to the refusal of the. Court to grant the first prayer of the defendant, the defendant excepted.

The verdict and judgment were for the plaintiff, and the defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, ALVEY and IRVING, J.

*Charles J. M. Gwinn, Attorney-General,* for the appellant.

*Theo's B. Horwitz* and *John H. Thomas,* for the appellee.

BOWIE, J., prepared the following opinion in his lifetime, and the same being concurred in after his decease by the Judges who participated in the hearing, it was filed as the opinion of the Court:

The suit, which is the subject of the present appeal, was instituted by the appellee and his co-partner, William Fagely, trading under the name of John Haas & Co., against the appellant, Joseph M. Simmons, and his co-partners, Robert G. Rieman and Alfred Poor, trading under the name and firm of J. M. Simmons & Co., in the Superior Court of Baltimore City, on the 27th of June, 1870. The declaration filed on the same day contained only the common counts with an account annexed of the articles sold and delivered, and moneys paid, running from September 3rd, 1868, to November 30th, inclusive, aggregating in the whole the sum of $2192.68.

The defendants appeared on the 5th of September, 1870, and pleaded several pleas, viz., 1st, that they never were indebted as alleged. 2nd, satisfaction and payment. 3rd, special damages, by reason of the non-performance of the plaintiffs' contract to deliver coal, etc.

The cause was continued from May Term, 1870, to January Term, 1878.

On the 13th of February, 1878, issues were joined on the first and second pleas, and replications filed to the third. The death of Robert G. Rieman and Alfred Poor, co-defendants, were suggested, and Margaret G. Rieman and Charles J. M. Gwinn, administrators of the former, and Marion N. Poor, administratrix of the latter appeared and filed pleas in abatement, to which the plaintiffs replied, and defendants demurred to the replications, which demurrer the Court sustained.

On the 30th of September, 1879, the third plea of defendant was withdrawn, issues were joined on the first and second. On the 3rd of October, 1879, the death of Fagely, one of the co-plaintiffs, was suggested. By which successive deaths, suggestions and proceeding sthe parties were reduced to the present appellant and appellee.

The judgment of the Court below on the demurrer being against the appellee, and no appeal on his part, there is no question before us on that branch of the case.

The defendant, at the trial, took six bills of exceptions; five from rulings as to the evidence, and the sixth from instructions granted or refused.

The plaintiffs living and transacting business as coal merchants at Sunbury, Pa., and the defendants as dealers in coal at Havre de Grace, Maryland, the appellee to establish his account offered in evidence (the signatures thereto being admitted,) certain letters of the appellant, of the dates of September the 5th and 12th, 1868, respectively. The first seems to be in answer to a former letter relating to other and preceding dealings

between the appellant and appellee in coal. The last sentence, contained these words: "Ship us 4 loads egg, and 4 loads stove, soon as possible, at your lowest price." The letter of the 12th of September, 1868, addressed to the appellant was as follows: "Gents:—You may fill our order of the 5th inst. We will not order any more at present; you must put it at the lowest going price."

The appellee further proved that they had shipped coal and paid advances thereon, in fulfillment of the orders contained in the letters according to the bill of items which was offered in evidence; that four boat loads of coal were shipped from Sunbury, Pa., by the appellee to the appellant in September, 1868, and two boat loads in November, 1868, as appears by the bill of items; that there had been previous dealings between them, and the appellee had advanced the freight, etc.

Upon cross-examination of the plaintiff's witness, the defendant proved that the first two shipments of coal by the appellee in September were on an August order from appellant, and not on the order contained in their letter of September 5th, 1868; that in August the appellee sold coal at $2.25 per ton, and that coal advanced in price in September, about forty cents per ton.

The appellant then offered in evidence the *reply* of the appellee, dated September 7th, 1868, to the letter of the appellant of September 5th, 1868. To the admission of which the plaintiff objected. The Court below held that the same was admissible only for the purpose of showing the acceptance by the appellee of the order of September 5th, 1868, and was not admissible on any ground for the purpose of recoupment, to which ruling the defendant excepted.

This letter although described in the bill of exceptions as a reply to the appellee's letter of September 5th, contains no direct reference to that of the 5th of September, except in its last paragraph, which is in these words: "Will ship

Simmons *vs.* Haas.

you the coal ordered in yours of the 5th." The initial sentence, " yours came, remarks noted," is indefinite and may refer to any preceding letter. Then follows, "In yours of the 7th, you wished to know what we would be willing to take for five hundred or a thousand tons of egg and stove coal ;" all that follows until the last sentence accepting the order of the 5th of September, is an answer to a letter of the 7th of September, from the appellees' firm which had not been offered in evidence by the appellees or the appellant.

Letters of the adverse party are admitted in evidence against those writing them, as admissions against their interest, under the condition that they refer to the matter in controversy, and the whole admission is to be taken together. The text-writers on Evidence, and the decided cases, are not entirely in harmony as to the necessity of producing the prior letters, to which those offered in evidence purport to be answers, to make the latter admissible.

Taylor says, " In regard to letters, it has been held that a party may put in such as were written by his opponent, without producing those to which they were answers, or calling for their production ; because, in such case the letters to which those put in were answers, are in the adversary's hands, and he may produce them if he thinks them necessary to explain the transaction," for which he refers to *Lord Barrymore vs. Taylor*, 1 *Esp.*, 326, per Lord KENYON; *De Medina vs. Owen*, 3 *C. & Kir.*, 72, per PARKE, B.

On the other hand, it was decided in the case of *Watson vs. Moore*, 1 *Carrington & Kir.*, 626, that where one party produces the letter of another purporting to be in reply to a previous letter from himself, he is bound to call for and put in the letter to which it was an answer, as part of his own evidence. 1 *Greenleaf's Ev.*, sec. 201, *note* 1.

11                 v. 56.

However ingenious and plausible the reason assigned in the English authorities, it seems to us, the general principle adopted by the American authors on Evidence, that the whole admission must be taken together, generally requires the prior letter to be produced or accounted for before the answer can be properly admitted in evidence; though *we do not decide* it to be always the rule, and without exception, for the character of the letter and the case may make the production of the first unnecessary.

The rule in chancery that a party against whom an answer is produced, may claim to have the whole bill, as well as the answer, read as part of his adversary's case, upon the same ground that where one proves answers in conversation against a party, he may insist upon having the question to which he made the replies put in evidence, is, we think, a forcible illustration and correct application of the principle. *Vide Greenleaf's Ev.*, sec. 201, *note* 1, and authorities there cited.

Independently of this objection, (which does not seem to have been urged below,) the letter of the 7th of September, 1868, except its introductory and final paragraphs, referred entirely and exclusively to other contracts for coal, of which the items of account in controversy form no part, and the offers contained in it were positively declined by the appellant's letter of the 12th of September, 1868, saying, " You may fill our order of the 5th inst. We will not order any more at present; you must put it at the lowest going price." "4 loads egg; 4 loads stove."

It is argued by the appellant that this letter of the 7th, *per se*, furnished evidence to sustain his claim of recoupment, but it is not perceived what foundation such an indefinite offer, would furnish of damages sustained by the alleged non-compliance with the contract of the 5th of September. No time is stipulated within which the proposed contract was to be executed, and therefore proved

nothing as to ability to perform, or the market value of the article. To interpose a proposition of this vague character, between the lines of a clear, concise and definite contract, would inevitably have involved the jury in inextricable doubt and confusion.

In the further progress of the trial, the appellant offered in evidence a letter from his firm, dated the 15th of September, 1868, to the appellee, and the answer thereto, dated the 17th of September, 1868 ; in the first of which the appellant advised the appellee, "You may make our order for 1000 tons, at prices for 8 loads, fixed at $3.25, in yours of 7th and 8th inst., which you promise and engage to ship us 4 loads egg and 4 loads of stove at ——. We want you to get them off fast as possible ;" to which the appellee in their answer of the 17th, 1868, replied, "We have accepted your order, and could ship you one cargo per day had we the boats, but the boats are hard to be had. Can you not give boatmen orders to come to us ? By so doing you will oblige."

The appellant also offered in evidence a letter dated October 7th, 1868, from their firm to appellee, urging the latter to ship "all the coal you owe us, as we must have it for shipment; we sold it all, and parties are urging us to ship it," etc., and the answer thereto of the 14th of October, 1868, regretting that they were not able to ship as much that month as in the preceding.

Without incumbering this opinion with a detail of further testimony on this point, we think it sufficiently appears from the record there was ample testimony admitted without objection, to enable the defendants to sustain their defence of recoupment, if it was not counteracted or overcome by other testimony submitted by the plaintiffs, and the instructions granted by the Court at the appellant's instance gave him the full benefit of such testimony, if the jury should so find ; and we do not see that any substantial injury has been sustained by the rejection

of the letter alluded to as evidence, and we cannot disturb the ruling in that regard.

The plaintiff further to sustain the issue on his part, made the following offer in writing : " The plaintiff having proven by Reuben Fagely a competent witness, that in the early part of November, 1868, he was in the employment of the plaintiffs and called upon the defendant, Simmons, to pay the sum of $1432.37 to the plaintiffs for coal, which had been shipped by the plaintiffs to the said J. M. Simmons & Co. during the month of September, 1868, and that Simmons then proposed that if the plaintiffs would ship to said firm of J. M. Simmons & Co. two additional boat loads of coal, at the September price of $3.25 per ton, the said firm of J. M. Simmons & Co. would pay therefor, and also would pay the said plaintiffs' bill of $1432.37, and having also proved by said witness that no one but himself and said Simmons were present when said proposition was made ; now offers to prove by John Haas, one of the plaintiffs, that said Fagely communicated to him the said proposition of the said Simmons, and that the said firm of John Haas & Co. accepted said proposition, and in pursuance of said proposition and acceptance, shipped two additional boat loads of coal to the said firm of J. M. Simmons & Co., at $3.25 per ton."

The defendant objected to the admission of the evidence of John Haas.

1st. Because Robert G. Rieman, an original party to the contract sued on in this case, is dead.

2nd. There is no evidence that the said Rieman was a nominal party to said contract, or a non-participant in the business of said J. M. Simmons & Co.

3rd. That, on the contrary, there is evidence he was a general partner in the firm, not absent from the State, and the presumption is he was as a general partner, chargeable with his share of the partnership business to fulfil his duty.

4th. That the case is within the rule laid down in *Miller vs. Motter*, and not that of *Hardy's Case.*

In the case of *Miller vs. Motter*, 35 *Md.*, 433, the action was on a joint and several note against the surviving maker, and the plea of the Statute of Limitations being interposed, the plaintiff, the payee, to remove the bar, offered to testify on his own offer, that the deceased maker made a payment on the note, and at the time of such payment endorsed the same on the note. This was a case clearly within the reason and language of the exception in the Evidence Act, excluding parties from testifying on their own offer. *Acts of* 1864, *ch.* 109, *sec.* 2, 1868, *ch.* 116, 1876, *ch.* 222; *Revised Code, p.* 750, *sec.* 2. The original party with whom the transaction deposed to occurred, was dead; there was no equality or mutuality in the position of the parties; but in the case of the evidence excepted to, the contract testified to, was made with the surviving party who was competent to testify on his own offer and contradict the statement of Fagely, if it was untrue. This is directly within the rule laid down in 51 *Md.*, 598, as expressed in the quotation from *Wharton's Evidence:* "The exception does not incapacitate where the suit is against co-defendants, of whom only one is dead, where the contract was made either with the living co-defendants or with the living and the dead concurrently." *Hardy & Bros. vs. Chesapeake Bank,* 51 *Md.*, 598.

The third exception of the appellant is taken to the refusal of the Court below, to allow him, the defendant, to be asked "whether he had sold the specific coal, which he had contracted for from Haas & Co.," and to answer the question.

The object of this interrogatory, as we learn from the appellant's argument, was to show the loss sustained by him, in consequence of the appellee's non-compliance with his contract, and to recoup the same from the appellee's claim.

The damages or loss to be allowed a defendant by way of recoupment, are those immediately and directly resulting from the non-performance of the plaintiff's duty or obligation, and which grows out of, and forms a part of, the contract in which the claim of the plaintiff originated. *Carroll's Adm'r vs. Quynn,* 13 *Md.,* 379; *Abbott vs. Gatch,* 13 *Md.,* 314; *Warfield vs. Booth,* 33 *Md.,* 63; *Rice vs. Forsyth,* 41 *Md.,* 389.

The contract on the part of the plaintiffs, was "to ship from Sunbury, a certain quantity of coal as soon as possible at their lowest price."

The direct and immediate loss resulting from its non-performance, would be the difference of cost in procuring the shipment of the same quantity of coal, from other shippers at the same place and time, to place the purchasers in the same situation, as they would have been in if the plaintiffs had complied.

The loss accruing from the inability of the defendants, to consummate sales of coal, in consequence of the plaintiffs' failure, is a remote special damage, which must be the subject of a special plea, to enable the plaintiffs to meet that defence.

The special plea alleging such damage having been withdrawn, the plaintiff had no notice that such an issue would be raised, and the defendant was properly excluded from such inquiry.

The fourth and fifth exceptions are taken to the refusal of the Court, to admit letters of the defendant, dated October 30th, 1868, and April 13th, 1869, to the plaintiff, complaining of losses sustained by the defendant, in consequence of not getting the coal purchased of plaintiff, and proposing to leave the said matter to two or three disinterested persons for adjustment. As far as appears from the record, these letters not being in response to any emanating from the adverse party, are *ex parte* declarations of the party offering them in his own favor.

The sixth and last exception is taken to the granting of the first prayer of the plaintiff, and the fourth prayer of the plaintiff as modified, and the refusal of the first prayer of the defendant.

The first prayer of the plaintiffs referred exclusively to the construction of a letter of the defendants, dated October 3rd, 1868, addressed to the plaintiff as follows: " Gents : Your bill received ; we will send you a check next week, after we make some collections. Hurry us down some coal fast as possible, we must have a proportion of sizes : not all No. 1, but egg and stove ; you have sent us very little egg." Yours, &c.

The first prayer instructed the jury, if they believed that the account referred to in the above letter, was the account of plaintiffs for $1432.37, for the coal which had been shipped in September, 1868, then the said letter is an admission of the correctness of said account, as to the amount delivered and the price charged therefor.

It is objected to this prayer, that it makes the letter unqualified evidence of an admission of the correctness of the said account, as to the amount delivered and the price charged therefor, when the letter itself shows an obligation on the part of the appellee's firm to supply more coal of different sizes. That if the coal shipped on September 12th and September 19th, 1868, was, as it would seem to have been from this letter, parts of an entire order, then the letter was not evidence of the correctness of the account in any particular, because no liability in such case would have existed, unless the entire order had been complied with. When the particular account was offered in evidence in connection with the letter of the appellant of October 3rd, 1868, the Court should have qualified its instruction by the limitation that the letter was not such evidence, if the jury should find such deliveries were under an August contract, which had not been duly executed, or rescinded as to the unexecuted part.

The instruction complained of, does not in the remotest degree, determine the weight or effect of the evidence which the letter furnishes on the hypothesis supposed in it; it simply declares it is an admission of the correctness of the amount and price of the articles charged in the bill.

The identity of the account being established, the promise to send a check next week, is equivalent to a promise to pay, and an absolute recognition of the claim *pro tanto*, unless qualified by the writer, of which in this instance there is no pretence. Under whatever orders the items of the account might have been shipped, the promise to pay an itemized account, giving dates and price of articles delivered, was *prima facie* an admission of the correctness of the account until otherwise proved by the defendant, and this was the extent of the meaning of the prayer.

The object of the plaintiff's fourth, and the defendant's first and second prayers was, to prescribe to the jury the rule which should govern them, in allowing the defendant by way of recoupment, such damages as they might find he had sustained, (if any,) in consequence of the plaintiff's failure to deliver the coal.

The plaintiff insisted that the right of recoupment must be confined to the damages resulting from the nonfulfilment of the contract of the 5th of September, 1868; the defendant claimed allowance for damages accruing from failure to deliver under any contract; the Court by its modification of the plaintiff's fourth prayer, and rejection of the defendant's first, assumed a middle ground, holding that if the first contract was merged in the second, then the jury might allow the defendant by way of deduction, the damage, if any, they may find the defendant's firm sustained by the non-delivery of so much of the 1000 tons, as they may find was not delivered. But if the contract of the 5th of September, 1868, for 8 boat loads, was a separate and distinct contract, then they

could only deduct from the price of so much as was de-
livered under the contract of that date, such damage, (if
any,) as they may find the defendant sustained by the
non-delivery of the whole of the eight boat loads. In
other words, that the damages sustained by breach of a
second distinct contract, were not to be deducted from the
balance due on an extra independent contract.

This proposition seems to be so self-evident, and conso-
nant to all the decisions on the subject of recoupment,
that it needs no argument or authority to sustain it.

After a careful examination of the rulings of the Court
below, and due consideration of the arguments of the
counsel, we find no error in the proceedings, and there-
fore the judgment below will be affirmed.

*Judgment affirmed.*