GLOBE HOME IMPROVEMENT COMPANY, INC. ET AL. *v.* McCARTY

[No. 153, October Term, 1953.]

514

*Decided May 21, 1954.*

*Motion for rehearing filed June 19, 1954, denied June 21, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Warren J. Weinberger* for the appellants.

*Arold H. Ripperger,* with whom were *James A. Pine* and *Charlotte W. Pine* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment of $3,431.40 in a contract case tried before the court without a jury. It was conceded that the appellant, having a contract to renovate the post office building in Baltimore, entered into a written sub-contract with the appellee on April 24, 1950, whereby the latter undertook to perform certain work on the floors at a price of 9c per square foot. The appellant contends that this contract covered not only the sanding and sealing of the floors, but also the waxing thereof. The appellee contends that the contract did not include waxing, and that a separate oral contract was later made whereby he agreed to wax the floors at a price of 3c per square foot.

Section 2 of the sub-contract of April 24, 1950, signed by McCarty and Raymond L. Pursley on behalf of Gaybis, provided that "the materials to be furnished and the work to be done by the sub-contractor are according to plans and specifications under section seven (7) Floor Sanding." Section 4 provided that "the contractor agrees to pay the sub-contractor for the performance of his work the sum of nine (.09) cents per square foot in current funds, floor seal furnished by us, subject to additions and deductions for changes as may be agreed upon, * * *." These are the only sections that have any

bearing upon the kind or quantity of the work. It may be noted that waxing is not mentioned.

Section 7 of the general specifications in the principal contract, under the heading "Floor Repairs" does not mention waxing under the heading of "extent of work" although there are references to laying new floors, repairing and replacing others, sanding and sealing; but under the heading "floor treatments", section 7-17 calls for the application of "two coats of finish material" after the second coat of sealer is dry. Section 7-24 specifies the type of finish material as "a water emulsion floor wax". Section 7-14, under the heading "sanding", deals with that operation alone. It is clear that section 2 of the sub-contract did not cover all of the work mentioned in section 7 of the general specifications, and it is only by implication from the reference to "floor seal" in section 4 of the sub-contract that it could be extended beyond the "Floor Sanding" specified in section 2.

Thus, we think the sub-contract was sufficiently ambiguous to permit testimony as to the surrounding circumstances and subsequent conduct of the parties as an aid to its interpretation, and, indeed, it does not appear that any objection to the testimony was made below or in this Court, on this ground. Instead, the appellant argues that the testimony on both sides "establishes a usage existing as between the parties to the contract whereby the word 'sanding' meant a complete and finished job". But the testimony of the appellee is that he was only "supposed to sand and seal", and the waxing "was supposed to be eliminated". He claims that Pursley told him so. Myer Gaybis, the appellant, admitted that "the terminology is vague as far as the court would be concerned", but undertook to show that McCarty understood it would include waxing because he had never charged over 9 cents for floor work, including waxing, on other jobs. There was no testimony as to any trade usage.

McCarty testified that on May 7, the question of waxing was brought up by Charles Guth, an inspector for

the Post Office Department. McCarty told Burke, the foreman of Gaybis, that he "wouldn't wax it because I didn't agree to do it, and it was to be steel wooled, waxed, and steel wooled and waxed again". Burke got in touch with Pursley, who came down right away, and after some dickering, it was agreed between Pursley and McCarty, that the latter should go ahead with the waxing and be paid 3c a square foot, the waxing material to be supplied by Gaybis. McCarty produced a pencil note he claimed Burke had left the next day, telling him to go ahead, and this note was offered in evidence. Burke fully corroborated this agreement, and identified the note. He testified the waxing was done the following week. Pursley did not testify. Simpson, an employee of McCarty, also corroborated his statement as to the note and the agreement.

Gaybis testified that Pursley never told him about the agreement, and Pursley was not authorized to make any contracts without consulting him. He admitted that Pursley was employed as an estimator and supervisor, and was authorized to sign the contract of April 24 with McCarty. We think the trial court was correct in holding that the hiring of McCarty was within the scope of his apparent authority. *Development Co. v. Houston,* 179 Md. 441. Of course, the existence and terms of an oral contract, when disputed, are for the trier of facts to determine. *Weil v. Free State Oil Co. of Md.,* 200 Md. 62. We cannot find that the court's findings were clearly wrong.

The appellant asks us to review the action of the trial court in denying his motion for new trial, based on fraud and newly discovered evidence in the form of an affidavit by Charles Guth, that he never signed the note offered in evidence, and an affidavit filed with the Federal authorities by McCarty's bookkeeper showing that Simpson worked on the post office job on May 21, 1950. The trial court had these affidavits before it and may well have concluded that the affidavit of Guth was irrelevant as the implication from the testimony of Burke was that

518　　· . .

Burke had written it, and that the affidavit as to Simpson, whose testimony was merely cumulative, could hardly alter the result, even if it were accepted as showing that he was mistaken as to the date in 1950 rather than the bookkeeper who filed it. In any event, it is clear that the motion and exhibits were considered by the trial court, and that is all that the appellant can require. *Snyder v. Cearfoss*, 186 Md. 360, 367; *State, Use of Scruggs v. Balto. Transit Co.*, 177 Md. 451, 454. In view of our conclusion, we need not pass upon the motion of the appellee to expunge the affidavits from the appendix.

*Judgment affirmed, with costs.*