GLEN BURNIE SHOPPING PLAZA, INC., ET AL. *v.* SCHREIBER BROTHERS, IN- CORPORATED

[No. 256, September Term, 1958.]

*Decided June 25, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Sidney Schlachman,* with whom were *Harry Silbert* and *J. Seymour Sureff* on the brief, for appellants.

*William J. McWilliams* and *Joseph S. Kaufman,* with whom were *Needle & Melnicove* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

Glen Burnie Shopping Plaza, Inc., (Shopping Plaza), and Two Guys From Harrison, Inc., (Two Guys, Md.) both Maryland corporations and defendants below, appeal from a decree of the equity court of Anne Arundel County, which permanently enjoined them from offering for sale and selling meats, poultry and other enumerated items of food, beverages and merchandise at the premises known as Glen Burnie Shopping Plaza.

There is little dispute as to the facts themselves; rather the dispute is whether, under the facts, the defendants violated a covenant contained in a lease from Shopping Plaza to the appellee-plaintiff, Schreiber Bros. Inc., (Schreiber). Shopping Plaza was the owner of a shopping center located at the intersection of 6th Avenue and Ritchie Highway in Glen Burnie, and, on January 18, 1957, it entered into a lease with Schreiber

for a portion thereof, which said lease contained among its provisions, the following:

> "4A. Tenant covenants and agrees that the demised premises shall be used by the Tenant for the following purposes and for no other purposes whatsoever— for the use of a retail food supermarket.
>
> "Sale and marketing at retail, and warehousing, storage and packaging incidental to sales of the following:
>
> "Exclusive Items: meats, poultry, beverages, groceries, grocery household items, grocery toilet articles, produce, fruits, vegetables, bakery products, sea food, dairy and delicatessen products, dried or canned or packaged in any manner whatsoever, all for consumption off the premises only.
>
> "Tenant will not sell any drugs or patent medicines. Landlord will not permit any other tenant of the shopping center (other than the within Tenant) to sell any food product items normally and generally sold by food markets or to sell any of the above 'Exclusive Items', except as noted below.
>
> "It is understood that Sun Ray Drug Co., as a tenant in the shopping center, may sell groceries normally sold in a drugstore."

After this and other leases were entered into by Shopping Plaza, all of its stock was acquired by Two Guys From Harrison, Inc., a New York corporation (Two Guys, N. Y.), which also owns all of the stock of Two Guys, Md., a Maryland corporation and an appellant herein. However, it is unmistakably clear that, before Two Guys, N. Y., bought the stock of Shopping Plaza, it tried to make certain that it would be able to carry on, as a part of its merchandising operation here,[1] the sale of produce generally sold by retail food markets.

---

1. The parent company, Two Guys From Harrison, Inc., of New York, does a large business in many parts of this country—some $60,000,000 per year. It consists of merchandising a large number of items, with food produce being a substantial part of its business.

In an attempt to effectuate this result, it evolved the following rather ingenious but somewhat callous plan. Changes in several of the leases were first obtained, but Schreiber refused to agree to any change whereby it released its exclusive coverage under its lease. The Sun Ray Drug Company (Sun Ray) mentioned above in Schreiber's lease, had been demised some 10,000 square feet in the shopping center by lease on February 4, 1958. It was claimed by the appellants that Sun Ray had set aside 5500 square feet of its space to sell "groceries normally sold in a drugstore." Home Utilities of Glen Burnie, Inc., (Home Utilities), another totally owned subsidiary of Two Guys, N. Y., sub-leased this 5500 square feet of space from Sun Ray with the claimed privilege of selling groceries customarily sold by drugstores. This, in effect, made Two Guys, N. Y., landlord to itself as tenant of the 5500 square feet and tenant to itself as landlord thereof; and, after it started selling many grocery items in addition to those usually sold in drugstores—which it did—it was in direct competition with its tenant, Schreiber. The 5500 square feet sub-leased from Sun Ray was separated from the drugstore operations of that concern by an iron fence, or similar structure, so that a customer in the drugstore was required to go out one door and in another in order to purchase groceries in the 5500 square feet area; however there was no fence or obstacle of any kind between this area and the general operations of Two Guys, Md. In other words, while the 5500 square feet of space is (theoretically or from a bookkeeping standpoint) being conducted by Home Utilities as a sub-lessee of Sun Ray, it, to the general public and in reality, is being operated as a part of the overall merchandising of Two Guys, Md. The pictorial, as well as the oral, evidence makes it definitely clear that the operation upon this space was very close in nature and character to that of a supermarket and greatly exceeded the ordinary selling of groceries in the average drugstore.

During the course of the trial, Martin K. Schreiber testified, over objection, that his agent made an investigation as to the products sold by Two Guys, Md. He was permitted to read a list of items and to state that they were purchased, in his absence, by people who were not present in court. He iden-

tified items of groceries and other merchandise from a series of sales receipts showing only prices with no indication of the nature of the corresponding item which had been purchased. There is no doubt that this evidence was objectionable and should have been excluded. A part of it is plainly hearsay, and, in regard to the sales slips, it is well settled that a witness should not be permitted to give evidence of his inferences from what a third person has written. *Green v. Caulk,* 16 Md. 556. However, its admission was not prejudicial. While it was received at the beginning of the trial, it turned out to be purely cumulative in nature. Not only did the defendants admit in their answer the sale of many items of groceries, but, as stated above, other testimony satisfactorily established the fact that the operation conducted on the 5500 square foot area resembled closely that of a super market. Under these circumstances, the error was harmless.

The appellants next contend that Sun Ray had the right under its lease to sell groceries normally sold in a drugstore and it had a further right to grant that privilege to its sub-lessee, Home Utilities; therefore, while claiming to have sold only items of groceries normally disposed of in drugstores, they should only have been enjoined from selling those items not "normally sold in a drugstore." We have already pointed out that the evidence establishes that groceries were being sold by Home Utilities that were not normally dispensed by drugstores; hence, it is unnecessary to pursue that particular claim further.

If we assume, without deciding, that Sun Ray had the right under its lease to sell groceries normally sold in drugstores and had a further right to sub-lease, in good faith, its space with the privilege of selling such groceries, we are unable to conclude that the above described conduct of the parties to the lease between Schreiber and Shopping Plaza and the circumstances resulting therefrom were within the intention of the parties to that lease and Sun Ray, which was mentioned therein. In the first place, it is very unusual that a drugstore would devote more than one-half its floor space to the purpose of disposing of groceries. In addition, it was obviously the intention of the parties that the provision for the selling of "gro-

ceries normally sold in a drugstore" was contemplated as being utilized in conjunction with the actual operation of a drugstore. Here, however, we find the operation of the 5500 square foot space completely severed from the conduct of the drugstore— not only in the management but also from a physical point of view—and, in reality, being conducted as a part of the store of Two Guys, Md., in direct and sharp competition with Schreiber. The conduct of Two Guys, N. Y., and its subsidiaries, with their leases and sub-lease, shows an unfortunate and unwarranted attempt to avoid, evade and circumvent the agreement with Schreiber to the effect that it would have the exclusive right to sell particular items of groceries in the shopping center, subject to the right of Sun Ray to sell those usually sold in drugstores. The chancellor was clearly right in enjoining the operation as it was being conducted. *Schmidt v. Hershey,* 154 Md. 302, 140 A. 363; *Slice v. Carozza Properties, Inc.,* 215 Md. 357, 137 A. 2d 687.

However, he "perpetually" enjoined and restrained them. We think the injunction should be a final one for the length of the present lease with Schreiber or any extension thereof in its present form; consequently, we shall remand the case with the direction that the decree be modified to this extent.

> *Cause remanded for the purpose of the passage of a decree not inconsistent with this opinion; the appellants to pay the costs.*