## EISENBERG, Administrator *v.* AIR CONDITIONING, INC.

[No. 199, September Term, 1960.]

328

*Decided May 10, 1961.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Samuel S. Eisenberg* and *William J. O'Donnell* for the appellant.

*Harry Goldman, Jr.,* for the appellee.

SYBERT, J., delivered the opinion of the Court.

Bernard C. Soothcage filed a nonresident attachment on original process in the Baltimore City Court against the appellee, Air Conditioning, Inc., for salesman's commissions and supervisory and servicing charges. His claims were partly based on a written contract entered into on October 15, 1956, with Air Conditioning whereby he was employed to sell its commercial and industrial type air conditioning units in Maryland, Virginia, Delaware, and the District of Columbia, for which he was to receive a salesman's commission of ten per cent of the net sale price. In addition, Soothcage claimed commissions on certain sales not within his territory, and compensation for supervising installation of the units and servicing them when trouble developed within a one-year guaran-

tee period. The latter claims were based on alleged oral agreements, or in the alternative, *quantum meruit.*

Several months prior to trial on the merits, a hearing on motion to quash Soothcage's second amended short note in attachment was held before Judge Cullen. In its opinion and order, the trial court concluded that Soothcage's charge for supervision and servicing (as distinguished from commissions) represented an unliquidated claim as it could find no sufficient proof of a meeting of the minds on the rate of compensation to be paid. The claim for commissions, on the other hand, was held to be for a liquidated amount. The court found that since Soothcage had posted a bond for the amount of the claim held to be unliquidated, this met the requirement of Maryland Rule 1140 c 5 in regard to attachment on original process for an unliquidated claim. The motion was therefore overruled.

By a subsequent order, appellant's motion to place the case on the jury trial docket was denied by Chief Judge Emory H. Niles.

The case was marked by voluminous pleadings, evidenced by six pages of docket entries in the Record Extract. It finally came to trial without a jury on Soothcage's third amended short note, after his death was suggested and his Administrator was substituted as plaintiff. A garnishee, Stone Construction Co., had confessed assets of $18,483.00. Soothcage's third amended short note claimed a total amount due of $37,-265.97 (as compared with $17,293.00 claimed in the original short note). The trial court, Judge Harlan presiding, disallowed plaintiff's claim for supervision and servicing and for commissions on jobs done outside appellant's assigned territory, except in two instances where the court found there was sufficient proof of oral agreement between the parties that a commission would be paid. Commissions on sales covered by the written contract were allowed with certain modifications agreed upon by the parties, according to evidence offered by Air Conditioning and accepted by the court. After allowing credits for sums already paid to Soothcage, and for telephone bills charged to him, the court entered judgment in favor of plaintiff-appellant for $3,863.80.

Upon this appeal taken from the judgment by the administrator of Soothcage's estate, five contentions are made: (1) that the claim for supervision and servicing was incorrectly held to be unliquidated; (2) that the denial of a trial by jury unjustly restricted appellant's rights; (3) that the decision of the trial court was contrary to the facts and the law with reference to allowance for commission, for supervisory service and in permitting a set-off; (4) that the court erred in admitting compromise data; and (5) that the court erred in the admission of hearsay evidence.

It appears that no useful purpose would be served in setting forth in detail the many points of dispute raised below or the many items of evidence introduced. But it is well to bear in mind Maryland Rule 886 a, which provides that when a case has been tried below without a jury, "this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses." See *Hall v. Morris,* 213 Md. 396, 132 A. 2d 113 (1957). The weight to be given evidence is under these circumstances a question for the trial court. *Taylor v. Freeman,* 186 Md. 474, 47 A. 2d 500 (1946).

(1)

With respect to appellant's first contention, careful examination of the record provides no support for finding clearly erroneous the trial court's decision that Soothcage's claim for supervision and servicing was an unliquidated one. After considering "* * * the myriad pleadings herein and the many points of law advanced in the arguments by both counsel, as well as the testimony taken on the issue of liquidity of the claim set out [by plaintiff] * * *" the trial court found that there was not sufficient proof of a meeting of the minds between the parties in regard to a rate to be paid for Soothcage's services, but rather, that Soothcage appeared to be suing on a charge fixed unilaterally by himself. This Court held in a leading case also involving a suit for services per-

formed, that where a precise sum for damages is not agreed upon, and is not of the essence of the contract between the parties, the *quantum* of damages is unliquidated. *Blick v. Mercantile Trust Co.,* 113 Md. 487, 77 Atl. 844 (1910). In that case the Court concluded, as did the trial court in this case, that there was no agreement in which the defendant bound himself to pay any particular sum, but rather that the value placed on the services was what plaintiff himself assumed them to be worth. Cf. *Eastover Co. v. All Metal Fabr.,* 221 Md. 428, 158 A. 2d 89 (1960), where the Court held the claim for services to be a liquidated claim, since the contract itself provided the basis of computation as to prices of material and *hours of labor.* See also 6 Corbin, *Contracts,* § 1290.

The contract involved in the instant case mentions nothing in regard to compensation for supervision and servicing, and there was conflict in the testimony as to whether any such compensation was ever agreed upon. It was therefore a function of the trial court to evaluate the evidence, and its conclusion that the claim was unliquidated cannot, on this record, be said to be clearly in error. In any event, appellant would not seem to have been prejudiced by that holding, since Maryland courts have jurisdiction in attachments on original process in *ex contractu* actions for unliquidated damages, Rule 1140 b 1, and appellant was permitted to amend his pleadings and file an attachment bond to cover the unliquidated portion of his claim. See *Lanasa v. Beggs,* 159 Md. 311, 151 Atl. 21 (1930), and *Gill v. Physicians' and Surgeons' Bldg.,* 153 Md. 394, 138 Atl. 674 (1927).

(2)

Appellant claims the lower court erred in denying his motion for a jury trial, which was filed more than a year after institution of the suit. In seeking to avoid a much shorter time limit for electing a jury trial, said to be imposed by Rule 536 of the Supreme Bench of Baltimore City, appellant urges that the rule is not applicable to this action because of a provision in it stating that it "shall not apply

* * * to any proceeding under writs of attachment, or execution * * *." Appellee attempts to refute this contention by arguing that once the garnishee had confessed assets, there was no longer any attachment proceeding to try, but that the trial below was on the short note or declaration only, necessitating compliance with Rule 536 to obtain a jury trial. He cites in support 2 Poe, *Pleading and Practice,* 5th Ed., §§ 533, 535.

The rule is not in the record. This Court does not ordinarily take judicial notice of the rules of the lower courts, and the presumption is that the proceedings in the court below were in conformity with its own rules. *Cherry v. Baker,* 17 Md. 75 (1861). See also *Scott v. Scott,* 17 Md. 78 (1861); *Morrison v. Welty,* 18 Md. 169 (1862); *Tyler v. Murray,* 57 Md. 418 (1882); *Clay v. State,* 211 Md. 577, 128 A. 2d 634 (1957); and *Pinkston, Tr. v. Higham,* 224 Md. 513, 168 A. 2d 712 (1961). We might add that it would appear from the portion of the rule quoted in appellant's brief that Chief Judge Niles ruled correctly that the time limit for electing a jury trial, imposed by the rule, applied to the short note.

### (3)

We find no reversible error in the rulings of the trial court as to the facts and law with reference to the allowance (a) for commissions, (b) for supervisory service, or (c) in permitting a set-off.

### (a)

There are two major items in controversy as to the amount of commissions payable to Soothcage under the contract. The chief dispute with regard thereto is whether or not the Diecraft installation and the three Penn Fruit installations, all in the Baltimore area, were or were not governed by the terms of the contract providing ordinarily for commissions of ten per cent. If governed by these provisions, Soothcage would have been entitled to a commission of $7,000 on the Diecraft installation, instead of the $3,500 allowed by the court, and to $7,425 on the Penn Fruit installations, instead of $696.20 allowed.

The appellant relies upon those terms of the contract which ordinarily provide for a commission of ten per cent on the net sale price of units. On the other hand, the appellee points to a clause in the contract providing that commissions would be at the rate of ten per cent "and as amended in the future", and to another clause stating that Soothcage's rights under the contract should "not include any commitments made by the manufacturer [Air Conditioning] on its own." With respect to Diecraft, the testimony of appellee's officers indicated that, as contemplated by the parties in inserting the clause dealing with amendments as to commissions, Soothcage agreed to a reduced commission because Air Conditioning had been forced to lower its price to Diecraft by $7,820 in order to get the job. As to Penn Fruit, they stated that this was a commitment, or "house account", developed by Air Conditioning prior to Soothcage's employment, that the allowance to him was not for commissions but for certain services in connection with these installations, and that Soothcage agreed to the amount of the allowance. This testimony was corroborated by an undated letter written by Soothcage and received by Air Conditioning on August 1, 1958, listing as money due him the same amounts as those allowed by the court on these jobs, and by an accounting sheet which Soothcage had delivered to Air Conditioning on another occasion and which claimed only the lesser amounts. There were also introduced certain letters between Penn Fruit officials and Air Conditioning, the substance of which tended to establish the fact that the Penn Fruit work was developed by Air Conditioning before it entered into the contract with Soothcage. (The admissibility of these letters is contested and will be discussed hereinafter.)

The construction placed upon an ambiguous contract by both parties, before any controversy has arisen, is important in aiding in its interpretation. *Service Realty Co. v. Luntz,* 210 Md. 228, 123 A. 2d 201 (1956), and the many cases there cited. In determining what interpretation was given to a contract by the parties to it, the acts and declarations of the parties themselves may be considered. 3 Williston, *Con-*

*tracts,* § 623. See also *Hughes v. Thurman,* 213 Md. 169, 131 A. 2d 479 (1957).

The testimony here, and the corroboration of that testimony by the letters and the accounting sheet, would appear to show that the parties intended that the amount of commissions in special cases should be left to agreement between the parties as they arose, and that Soothcage was not to receive any commissions on the company's house accounts in his territory. We think that the trial court was not in error in considering such evidence in arriving at its conclusion that Soothcage himself had never claimed any more than the figures which it allowed him under the contract.

In addition to his compensation under the written contract, Soothcage, by virtue of alleged oral agreements, claimed that substantial sums were owed to him for commissions on jobs not included in his territory under the contract. In an answer to interrogatories, Soothcage described the occasion when the alleged oral agreement was made. A written instrument, signed by Air Conditioning but unsigned by Soothcage, allegedly incorporating the terms of the oral agreement, was introduced by appellant. There was testimony that Soothcage refused to sign this instrument when it was sent to him because of dissatisfaction with parts of it. The trial court, after weighing the conflicting testimony, concluded that the evidence was insufficient to establish any agreement between the parties for payment of commissions to Soothcage for anything done outside the territory covered by the written contract. It did allow the recovery of certain sums in connection with out-of-territory installations where it found an express agreement by the parties, not for commissions but for compensation for the performance of certain tasks. This Court has held that the *existence* and terms of an oral contract, when disputed, are for the trier of facts to determine. *Globe Home Imp. Co. v. McCarty,* 204 Md. 513, 105 A. 2d 216 (1954); *Snyder v. Cearfoss,* 187 Md. 635, 51 A. 2d 264 (1947). See 5 M.L.E., *Contracts,* § 28. The trial court had opportunity to weigh the extensive testimony and evidence offered and we are unable to find that its conclusions were clearly erroneous.

## (b)

Soothcage's remaining claim for compensation was for supervisory services performed in connection with the installation of the air conditioning units sold by him under the contract, and servicing them thereafter. Again appellant based his right to recovery upon an oral agreement or, in the alternative, upon *qauntum meruit*. In testimony at one of the preliminary hearings, Soothcage was vague about the circumstances of the agreement. In response to questions with respect to the charge for these services he stated, "I was to charge for it by hourly time," and also, "The rate I worked for was $8 an hour." The court in summing up his testimony during the hearing said, "He is also asserting a claim for services, which *he says* he was authorized to perform for customers of Air Conditioning, and he makes his charge in this connection just as a lawyer, or doctor, or anybody else like that would make, at so much an hour." (Emphasis supplied.) There was extensive testimony by officers of Air Conditioning to the effect that Soothcage was to receive no extra remuneration for the services. Perhaps even more damaging were the letters of Soothcage himself, which strongly imply that he expected *no compensation for his services*. His letters in effect were a protest against this situation. His testimony and letters indicate that the value of the services were put at what he himself felt them to be worth, an unliquidated claim, as we concluded earlier in this opinion. If there was any agreement here (which we do not find), it was so vague and indefinite in its essential terms as to be unenforceable. *Robinson v. Gardiner*, 196 Md. 213, 76 A. 2d 354 (1950); *Quillen v. Kelley*, 216 Md. 396, 140 A. 2d 517 (1958).

The claim for recovery for these services on a *quantum meruit* basis also must fail. In actions in the nature of assumpsit for services performed, it is necessary for plaintiff to show an agreement to pay for the services either express or implied from the circumstances. *Jarka Corp. of Balto. v. Pennsylvania R. Co.*, 42 Fed. Supp. 371 (D. C. Md. 1941); *Cleaves v. Sharp & Dohme, Inc.*, 166 Md. 546, 171 Atl. 374 (1934). The trial court found that the evidence failed to

establish such an agreement. Though whatever benefit which flowed from Soothcage's efforts was accepted by Air Conditioning, its contention was that such service was merely an incidental and natural part of his employment under the contract, in connection with sales made by him. We cannot conclude that the trial court was in error in finding that Soothcage's efforts were not contributed under an express agreement or under circumstances from which expectation of payment could be inferred.

## (c)

Appellant contends that the trial court erred in permitting a set-off. The court allowed appellee credits for telephone charges incurred by Soothcage but paid for by it, and for certain partial payments already made on commissions due to him. Appellant argues that a claim for set-off must be pleaded specially.

In *District Agency Co. v. Suburban,* 224 Md. 364, 167 A. 2d 874 (1961), decided at this term, Chief Judge Brune discussed fully the question of what must be pleaded specially as a set-off as distinguished from a recoupment. The essential conclusion drawn is that a claim growing out of an independent transaction (set-off) must be specially pleaded, while a claim arising out of the same transaction (recoupment) need not be, but may be proved under a general issue plea, unless an affirmative judgment is sought by the defendant. Rule 314 authorizes "any party against whom a claim * * * has been asserted" to "plead as a counterclaim any claim he has against any opposing party." Rule 342 c 1 (c) provides that a counterclaim must be specially pleaded if it seeks relief which is in excess of the amount sought by plaintiff or arises out of an independent transaction. Thus, as Judge Brune points out, although the words "recoupment" and "set-off" are not used, the rules are broad enough to cover both and the essential difference between them is preserved. See also 2 Poe, *Pleading and Practice,* 5th Ed., § 615; *Molesworth v. Schmidt,* 196 Md. 15, 75 A. 2d 100 (1950); *Simmons v. Haas,* 56 Md. 153 (1881). It follows that the allowance of the telephone charges and the prior payments made by Air

Conditioning to Soothcage were by way of recoupment, since both arose in connection with the contract in which part of the claim of plaintiff originated, and not out of an independent transaction. Hence a special plea of set-off was not required in this case, and the credits in question were correctly allowed under the general issue plea.

### (4)

Appellant complains that the trial court committed error by admitting into evidence Soothcage's undated letter, received by Air Conditioning on August 1, 1958 (hereinbefore referred to), on the ground that it was an offer of compromise and therefore inadmissible. If the letter be construed as an unaccepted offer to compromise the controversy involved in the litigation or as proof of the fact that an offer to compromise was made, it is inadmissible against the party who made the offer. *Union Trust Co. v. Resisto Mfg. Co.,* 169 Md. 381, 181 Atl. 726 (1935); *Brown v. Hebb,* 167 Md. 535, 175 Atl. 602 (1934); *Meyer v. Frenkil,* 116 Md. 411, 82 Atl. 208 (1911); 10 M. L. E., *Evidence,* § 123.

In determining whether or not a statement amounts to a compromise offer, the Court must look to the apparent intent of the parties 31 C.J.S., *Evidence,* § 285 b. While appellee argues that the rule applies only to offers of compromise by a defendant, it seems apparent that it also relates to an offer made by a plaintiff as it too implies a desire to avoid litigation, which is the reason Professor Wigmore assigns for exclusion of such evidence. IV Wigmore, *Evidence,* § 1061. See also *Biggs & Co. v. Langhammer,* 103 Md. 94, 63 Atl. 198 (1906).

At first, the trial court appeared to regard the letter as an offer of compromise, but later in the trial held it to be a statement of what Soothcage claimed was in fact owed to him by Air Conditioning. This conclusion is borne out by the testimony of the president of Air Conditioning that shortly after the letter was sent, Soothcage handed the accounting sheet (hereinbefore referred to) to him and said, "Joe, here's what you owe me." The figures on the accounting sheet are exactly the same as those in the controversial letter. It would

appear that the trial court was not in error in admitting the letter.

### (5)

Appellant attacks as hearsay the admission of letters between Air Conditioning and Penn Fruit and also a letter to Air Conditioning from Stone Construction Co., which tended to support appellee's claim that the Penn Fruit installations were house accounts and not subject to commissions under Soothcage's contract. The letters were offered to corroborate the testimony of one of the officers of Air Conditioning that he had solicited the Penn Fruit work prior to the signing of the contract with Soothcage. We see no prejudice in the admission of the letters, since the trial court allowed Soothcage's estate the amounts which he himself had demanded, and thus no damage resulted. The facts involved were established by other competent evidence, and hence the letters were merely cumulative and therefore their admission was harmless. *Glen Burnie Plaza v. Schreiber,* 220 Md. 303, 152 A. 2d 807 (1959); *Md. & Pa. RR. Co. v. Mer.-Safe, etc., Co.,* 224 Md. 34, 166 A. 2d 247 (1960).

Having found no prejudicial error in the rulings below, we will affirm.

> *Judgment affirmed; appellant to pay the costs of this appeal.*