## ALBERT N. HORNER et al. *vs.* JOHN T. POPPLEIN.

*Bill to Restrain Execution on Judgments—Magistrate's Judgments Improperly Entered—Laches in Prosecution of Suit.*

Plaintiff alleged that certain judgments rendered against him by Justices of the Peace had been rendered without his knowledge or consent, although purporting to have been made by confession; that certain other judgments entered against him by Justices and assigned to the defendant had been paid, and that the total amount of his real indebtedness to the judgment creditor was much less than the amount of the outstanding judgments. *Held,* that the evidence establishes most of the averments of the bill, and that the defendant should be enjoined from enforcing the judgments by execution upon payment by the plaintiff of a certain sum ascertained from the testimony to be the real amount of his indebtedness.

The entry of a judgment against a party, whether made in consequence of a mistake or of a misrepresentation as to his identity, is void if he was not served with process or did not confess the judgment.

When the person to whose use certain magistrates' judgments were entered sought to enforce them, the judgment debtor, in November, 1904, filed a bill to restrain the execution. The defendant's amended answer was filed in March, 1908, and the cause was tried in August, 1909. *Held,* that there was not such laches in the prosecution of the suit as requires the dismissal of the bill.

*Decided February 25th, 1910.*

Appeal from Circuit Court No. 2 of Baltimore City (SHARP, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*William S. Bryan, Jr.,* and *Julius H. Wyman* (with whom was *Wm. S. Taylor* on the brief), for the appellant.

*Bernard Carter* (with whom was *R. H. Johns* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

The question presented by this appeal is one of fact and arises upon proceedings in equity instituted by the appellee for the purpose of having canceled and released a number of magistrates' judgments which purport to have been rendered against him by confession.

It was stated in the bill of complaint that a certain Albert N. Horner had recently placed on record fifteen judgments alleged to have been confessed by the complainant in favor of one John C. Foster before certain justices of the peace in Baltimore City, amounting to the sum of thirteen hundred and twenty-five dollars, the judgments having been entered to Horner's use; that some of the judgments were never rendered by the justices named, or if so, were rendered without the complainant's knowledge or consent; that part, if not all, of the judgments had been paid, but had not been entered satisfied on the magistrates' dockets; and that the defendant, Horner, had issued execution on one of the judgments and caused a levy to be made upon property of the complainant and had threatened to issue execution on the other judgments. which would occasion the complainant great loss and injury.

The relief prayed for was that the defendant be directed to file certified copies of the judgments, to disclose the time and amount of all payments made by the complainant to him since their alleged rendition, and to cancel and release all or any of the judgments which had been satisfied.

In his answer, as amended after exception, the defendant stated that he had filed certified copies of the judgments held by him against the complainant and denied that there had been any payments on account of the judgments so filed. He then averred that the complainant on November 2nd, 1901.

paid to the defendant a sum approximating one thousand dollars in satisfaction of ten one hundred dollar judgments which were never recorded, and that on April 10th, 1905, he paid one hundred dollars in settlement of another outstanding judgment upon which execution had been issued, but that none of these judgments had any connection with the judgments filed and relied upon in this case, and that they have never been satisfied but are due and payable.

The judgments exhibited with the answer were fourteen in number, of which eleven purported to have been rendered by Justice John Behrens and three by Justice C. Charles Friedel; but it appeared afterwards that twelve of the judgments were properly attributable to the former and only two to the latter. Of the Behrens judgments two were dated February 26th, 1901, five July 17th, 1901, one March 4th, 1902, two April 1st, 1902, and two April 18th, 1902; and the Friedel judgments were both dated March 18th, 1902. Each of the judgments was for one hundred dollars with interest from date and costs of suit, except that one of the Behrens judgments of July 17th, 1901, and that of March 4th, 1902, were for fifty and fifty-five dollars, respectively and one of the Friedel judgments was for seventy-five dollars. The total amount of the judgments, therefore, was twelve hundred and eighty dollars. They all purported to be entered by confession in favor of John C. Foster and against John T. Popplein, the appellee, with entries to the use of Albert N. Horner bearing dates from October 20th to 22nd, 1904, corresponding with the dates of the receipt of the judgments for record in the office of the clerk of the Superior Court of Baltimore City.

It appears that subsequently to the filing of the bill of complaint execution was issued on eleven of the judgments, and upon petition of the complainant an order was passed restraining the defendant from proceeding with the enforcement of the judgments until the determination of this suit.

Testimony was later adduced by both sides, and upon final hearing the Court below passed a decree, from which this ap-

peal is taken, making perpetual the interlocutory injunction on condition that the complainant pay into Court the sum of four hundred and seventy-five dollars, which was decreed to be the amount owing on all the judgments of record referred to in the proceedings.

The evidence contained in the record is conflicting and in some particulars is quite obscure, but after a careful study of it we are of the opinion that the decree should be affirmed.

There is no pretense that any of the judgments in controversy were rendered upon any consideration except for money claimed to have been furnished by the appellant to the appellee through Foster, the judgment plaintiff. In none of the transactions did the appellant and appellee come into contact, and whatever indebtedness existed between them on account of the judgments was contracted through Foster as an intermediary. The testimony of both the appellee and Foster as to the amount of the indebtedness, was to the effect that it did not at any time exceed thirteen hundred dollars, of which the appellee paid one thousand dollars to the appellant on November 20th, 1901, leaving a balance of three hundred dollars due at that time, and that on April 9th, 1905, he paid one hundred dollars in settlement of one of the judgments on which execution had been issued; and they both insist that two hundred dollars is now the total extent of the appellee's liability. It was testified by both of these original parties to the judgments that on the occasion of the one thousand dollar payment the appellant stated explicitly that the balance of his claim was then three hundred dollars. When the appellant's attention was directed to this evidence, in the course of his testimony in his own behalf, he said that he did not recollect making the statement attributed to him but would not say that it had not been made. He disclaimed having any independent memory of the transactions, but relied largely upon the fact that the judgments were outstanding. Even upon this basis his contention was erroneous, as he repeatedly stated that the unpaid indebtedness was thirteen hundred and eighty dollars, while the judgments themselves

exhibited with his answer amount to one hundred dollars less than he claims.

He admits that he paid none of the money to the appellee and states that the whole amount was paid to Foster, who assures the Court upon his oath that the appellee received only thirteen hundred dollars. This would seem to be conclusive, in connection with the appellee's testimony, as to the real amount of his indebtedness on account of the confessed judgments, unless we are controlled by the fact that the appellant actually holds judgments in excess of that amount purporting to have been confessed by the appellee.

In regard to the rendition of the undisputed judgments Foster testified that the mode of procedure was that he would go with the appellee to the magistrate, would obtain judgment by confession for one hundred dollars each and enter them to the use of the appellant, to whom he would take copies of the judgments and from whom, upon delivery of the transcripts, he would receive the money; that these amounts were always secured by confessions of judgments and that the transactions did not aggregate more than $1,200 or $1,300. The appellee testified that the judgments he confessed in favor of Foster numbered only twelve or thirteen, and that in each instance he gave a judgment for one hundred dollars and received ninety. The appellant's testimony in this connection was to the effect that Foster brought him the judgments on the various occasions and that the appellee was not present; that he paid Foster full consideration for the judgments by cash and checks but did not know on what banks the checks had been drawn; and that a statement filed by him showing fifteen judgments, in addition to those which had been satisfied, was correct.

Justice Behrens' account of the transactions was that the judgments were entered up at the request of Foster; that he hardly thought the appellee was present; that he docketed eleven of the judgments on December 31st, 1900, the first being filled out in the usual form and the remainder being entered "ditto;" that this was due to haste on the part of

Foster who offered him five dollars to enter the judgments
and write out the transcripts within half an hour; that three
of the other judgments rendered by him and exhibited in the
case were entered in the same abbreviated way on his docket
because Foster or Horner was in a hurry; that he did not
charge up the costs of the judgments because he owed the ap-
pellant on a loan and the costs were to be applied to that in-
debtedness; that he would not accept a judgment by confes-
sion unless he knew the parties or had an order, but that hav-
ing known Foster for thirty-five years he felt safe in taking
an order from him, and he was satisfied that the order was
filed in the City Court among the papers. No such order,
however, was produced in evidence.

In reference to the judgments rendered by Justice Frie-
del it was testified by him that he had no recollection what-
ever on the subject; that his custom was to have a written
authority signed in his presence by the defendant for the
entry of a judgment by confession; that he does not know
the appellee; and that the orders for the judgments in ques-
tion were destroyed by the fire of February, 1904.

The evidence as to the circumstances under which some of
the judgments were rendered is not such as to create confi-
dence in their validity. There is ample opportunity for error
as to the identity of the party and the amount of the indebt-
edness when judgments by confession are rendered in the ab-
sence of the defendant and in such haste as to require the use
of ditto marks to represent them on the docket. In order
that a judgment of this character may be binding it is nec-
essary that it be entered by actual consent of the party to be
bound indicated by his personal presence and request or by
his authorization in writing or through an attorney. If he
does not *in fact* confess the judgments and is not served with
process, its entry against him whether in consequence of in-
nocent mistake or deliberate misrepresentation as to his ident-
ity, cannot be held to affect his rights. As was said by this
Court in *Hanley* v. *Donoghue,* 59 Md. 243: "It is essential
to the validity of a judgment *in personam* that the Court

should have jurisdiction over the parties, and if rendered without such jurisdiction, it is a mere nullity." There can be no question and none has been raised, as to the jurisdiction of a Court of Equity to restrain the execution of judgments thus rendered.

In the present instance there was no process issued, and he must find from the decided weight of the evidence that the appellee did not in reality confess the judgments now sought to be enforced and that they do not represent any indebtedness by him contracted.

The appellant offered in evidence a paper dated October 10th, 1901, purporting to have been signed by the appellee and witnessed by Justice Behrens acknowledging "that the confessed judgments, 18 in number, now in the hands of A. N. Horner, are *bona fide* and true judgments due him by me at this date without interest to September 1st, 1901, and without set off of any kind." It was testified by the appellant that he wrote this paper and that the signature to it was the appellee's, but that he did not remember seeing it signed; while the appellee, on the other hand, swore emphatically that it was not his signature and that the statement contained in the paper was not true. Justice Behrens' testimony on this point was that he could almost positively say that he never saw the paper before although it was his signature attached; that if the paper was signed by him, it was signed in Mr. Horner's office; that he never read it before he was called as a witness in this case; and that he could not say that he saw the appellee sign the paper as it may have been handed to him already signed. No explanation was given by the appellant as to why he considered it necessary to prepare this written evidence of recognition by the appellee of judgments which it is claimed he had formally confessed; and as the genuineness of the paper has been explicitly denied by the appellee and it has received no affirmative support from the ostensible attesting witness, its probative force has been practically nullified.

There were certain receipts purporting to be signed by Foster filed as evidence on behalf of the appellant. One was dated March 18th, 1902, and acknowledges the receipt from the appellant of $175 in full for judgments by confession of the appellee to Foster to that amount, and another was dated April 1, 1902, and was for $200 in notes and cash in full for two assigned judgments against the appellee. Foster's attention was called to these receipts and also to what purported to be his signatures to the assignments of the later judgments to the use of the appellant, and his testimony in this regard is indefinite and unsatisfactory. We are not here concerned, however, primarily with the relations and transactions between Foster and the appellant but with the situation as it exists between the appellant and the appellee. As we must find, according to the evidence in the record, that the appellee confessed only thirteen judgments of one hundred dollars each and that he received only thirteen hundred dollars, we are not justified in enforcing against him a greater liability on account of any difficulty we might have in determining rights which are not before us for adjudication.

It was argued on behalf the appellant that as between the appellee and Foster the relation of principal and agent existed, and that the appellee was consequently bound by Foster's acts in reference to the judgments; but we have been unable to find that this theory is supported by the evidence.

It was also suggested that the appellee has been guilty of laches in asserting his rights against the judgments and in prosecuting this suit. The bill was filed on November 30th, 1904, shortly after the attempt was made by the appellant to enforce the judgments, the answer as finally amended was filed March 25th, 1908, and the case was brought to a conclusion in August, 1909. This does not appear to be such delay as to involve laches under the circumstances shown by the record.

The Court below evidently included the Friedel judgments in the amount it found to be due by the appellee, but it seems to us that while the conditions may have been such

as to satisfy the Justice as to the propriety. of entering those judgments, yet the direct testimony of both parties to them that they were not in fact confessed by the appellee, in the absence of convincing evidence to the contrary, would warrant their exclusion from the appellee's liability. He has not appealed however, and the decree will be affirmed in the form in which it was passed.

*Decree affirmed with costs.*