STATE OF DELAWARE v. EDWARD J. STOESSER.

(*June* 7, 1962.)

LYNCH, J., sitting.

*Thomas Herlihy, III*, Deputy Attorney-General, for the State of Delaware.

*Henry A. Wise, Jr.*, for the Defendant.

Superior Court for New Castle County, Mag. Docket No. 292, 1962.

LYNCH, J.:

The essential facts of this case show that defendant was arrested on a charge of operating a motor vehicle while under the influence of intoxicating liquor, 21 *Del. C.* 4111(a). On August 18, 1961 he entered a plea of guilty before a Justice of the Peace to such charge, whereupon he was adjudged guilty, sentenced to and paid the minimum fine and costs. Under the provisions of Title 21 *Del. C.* § 708, any appeal would have had to have been taken within 15 days "from the time of conviction". Defendant did not appeal from that judgment of conviction. If defendant had appealed this court would have been limited to a review of the sentence imposed; it could not consider the merits, *State v. Stevens*, 3 W. W. Harr. 479, 139 A. 78 (1927); *Martin v. State*, 10 Terry 344, 116 A. 2d 685 (1955) and *State v. Gale*, 11 Terry 354, 130 A. 2d 786 (1957) and compare *Short v. State*, Del., 181 A. 2d 225, decided May 4, 1962 by the Supreme Court. The reasoning underlying these cases is that a plea of guilty is a waiver of all defects except the fact that the Court lacks jurisdiction. See annotation in 42 A. L. R. 2d 995.

Notwithstanding what had transpired on August 18, 1961, the defendant, about December 27, 1961, moved to set

aside his conviction and for permission to withdraw his guilty plea and in connection with his motions he filed an affidavit, reciting therein that on the day of his arrest defendant had not eaten anything since lunch; that he was ill; that his illness was such that he "was not able to think clearly" and thus he was not "able to understand the meaning of the" charge; that he was found to be suffering from hepatitis and was placed in a hospital. The affidavit also stated that "petitioner suffers from emphysema" and that the "emphysema and hepatitis have a definite effect on the accuracy of any intoximeter reading". The affidavit went on to state:

"* * *. That your petitioner is advised that the amount of alcohol which he had consumed, even assuming none of it had left the blood stream, would not have caused him to have a reading which would have reflected that he was presumably under the influence of intoxicating liquor."

Continuing, the affidavit stated further:

"Your petitioner acknowledges that, based on what he now knows, he was not in a fit condition to operate a motor vehicle but this was due to the unfortunate physical malady he was suffering from which not only impairs physical coordination but impairs the ability to properly think and evaluate a situation. This condition continued and existed at the time your petitioner appeared before this Court and petitioner believes that had this Court known of your petitioner's condition this Court would not have permitted him to enter any plea because this Court would have recognized that petitioner was incapable of fully understanding what he was doing."

It would appear then that, notwithstanding the fact defendant had pleaded guilty, had been convicted on such plea back on August 18, 1961, and had paid his fine and the costs imposed, the Justice of the Peace purportedly granted the motion to reopen the conviction and then permitted de-

fendant to withdraw his plea of guilty. He was retried and found guilty again by the Justice of the Peace. It is from this conviction the defendant took the appeal, to which the Motion to Dismiss is addressed.

Whether the Attorney General's Motion to Dismiss the Appeal should be granted will depend on the existence of power in the Justice of the Peace to reopen a judgment of conviction entered some four months before, to permit defendant to withdraw his plea, and then to be retried on an offense for which defendant had previously been convicted, sentenced, and paid his fine.

An examination of the law generally does not reveal any case holding that Justices of the Peace have the power which purportedly was exercised by a Justice of the Peace under the circumstances of this case. Of course, the absence of a precedent is not fatal or determinative if logic and justice otherwise dictate a person should have a remedy. I may say that there is no logic in the action which defendant took before the Justice of the Peace and I see no justice in what the Justice of the Peace purported to do.

*Clubine v. City of Merrill*, 83 Or. 87, 163 P. 85 (1917) is the closest case that could be found to the circumstances in the case at bar. There Clubine had been charged before a Justice of the Peace with the crime of selling liquor on an election day. The entries in the Justice's records included references to Clubine's acknowledging commission of the crime,—following his entry of a plea of not guilty. Clubine's attorney moved to strike such references from the record, but this motion was denied. The jurisdiction of the Justice to try the crime alleged was then challenged by demurrer. The demurrer was overruled.

The Justice of the Peace declined at first to grant Clubine the right of a trial on the theory that the references in the Justice's records were sufficient evidence of Clubine's

guilt, and he was convicted. An appeal was taken from such refusal to grant a trial. Several days thereafter the Justice of the Peace, *on his own motion,* set aside the judgment of conviction and ordered the accused to appear for trial. The accused then sued out a writ to review the conviction.

The Oregon Supreme Court, in determining the appeal and the writ of review, held, 163 P. at page 86:

"If no appeal were pending the [Justice's] court had a right to vacate its judgment if void; *the rule being that while a justice's court cannot set aside a judgment because it is erroneous, it may vacate a void judgment* and proceed as though no such apparent judgment had ever been entered. * * *." (Emphasis supplied)

It is to be noted that 51 C. J. S. Justices of the Peace § 113, p. 205 and in 35 C. J. Justices of the Peace § 308, p. 678, discuss the existence of the power of Justices of the Peace to reopen or vacate judgments. The statement is made that:

"* * * In some jurisdictions a justice has no power to open, set aside, or vacate a judgment rendered by himself, while in others he has such power in certain cases, as where the judgment is void for want of jurisdiction or otherwise."

Examination of the cases cited in both texts under the second grouping invariably points—as the treatise states—to a void judgment or to a statute which gave Justices of the Peace some power to vacate or reopen judgments. I found no cases where the existence of the power generally was recognized under any other circumstances; from my study of the treatises and digests I consequently entertain considerable doubt if there is any reported case which is authority for the proposition that, apart from statute, a Justice of the Peace has general power to vacate or reopen a judgment— whether it be in a civil case or in a criminal case—except in those in-

stances where the judgment is void or entered without authority of law, unless a statute grants some power to act. The holding of the Oregon Supreme Court in *Clubine v. City of Merrill, supra,* is quite logical. Surely a Justice of the Peace should be permitted to cause his records to reflect that any void act, taken on his part, should be stricken from his records.

It seems desirable then to examine our statutes* to determine if our General Assembly has, by statute, vested any such powers in Justices of the Peace.

Turning now to a consideration of the statutory and case law in Delaware relating to the jurisdiction and power of Justices of the Peace in criminal and civil cases, I find that Article IV, § 28 *Del. C.,* of the present Constitution of Delaware provides:

*"The General Assembly may by law give* to any inferior courts by it established or to be established, or to one or more justices of the peace, *jurisdiction of the criminal matters following,* that is to say—assaults and batteries, carrying concealed a deadly weapon, disturbing meetings held for the purpose of religious worship, nuisances, *and such other misdemeanors as the General Assembly may* from time to time, with the concurrence of two-thirds of all the Members elected to each House, *prescribe.*

*"The General Assembly may by law regulate this juris-*

---

*It is stated in 51 *C. J. S.* Justices of the Peace § 96 and 31 *Am. Jur.*—Justices of the Peace—§ 82, that matters of continuances and adjournments in Justice of the Peace Courts is regulated by statute. Delaware has had such a statute since before the 1852 Code; it is now 10 *Del. C.* § 9504, empowering Justices of the Peace to adjourn cases under given circumstances. It has been held that a Justice of the Peace cannot adjourn a case indefinitely, it must be to a day certain. *Jaques v. Rice,* 1 Har. 33 (1832); *Barr V. Chaytor,* 3 Har. 492 (1842); *Perkins v. Westinghouse Air Brake Co.,* 10 Del. Ch. 187, 87 A. 1027 (1913) and *Royal Ins. Co. v. Simon,* 20 Del. Ch. 297, 174 A. 444 (1934).

*diction,* and provide that the proceedings shall be with or without indictment by grand jury, or trial by petit jury, and may grant or deny the privilege of appeal to the Superior Court; provided, however, that there shall be an appeal to the Superior Court in all cases in which the sentence shall be imprisonment exceeding one (1) month, or a fine exceeding One Hundred Dollars ($100.00)." (Emphasis supplied)

Title 11 *Del. C.* § 2701(a) made provision for the general jurisdiction of Justices of the Peace in criminal matters:

"The justices of the peace shall have original jurisdiction to hear, try and finally determine misdemeanors alleged to have been committed, only when such jurisdiction is expressly conferred by law. * * *."

It does not appear, other than this statute, that "the General Assembly" has acted to "regulate the jurisdiction" of criminal matters or to prescribe the manner in which it is to be exercised. See, however, Title 10 *Del. C.* § 9505.

Over the years, by the enactment of a number of statutes, the General Assembly has vested specific jurisdiction in Justices of the Peace over a number of and various crimes. *Nowhere, however, do I find any provision whatsoever in any statute, granting to or vesting in Justices of the Peace the power to vacate or reopen judgments in criminal matters, or even grant new trials in such cases. It is otherwise in civil causes.*

By Title 10 *Del. C.* § 9542 Justices of the Peace are empowered to vacate default judgments in their civil jurisdiction, if application to do so is made "within 15 days after the day of giving a judgment by default", see *State ex rel. Rockey v. Hatton,* considered *post.* By Title 10 *Del. C.* § 9549 Justices of the Peace are empowered to grant a trial to any defendant in a judgment entered in a civil cause on warrant of attorney "by affidavit filed with the justice" if such defendant "denies the obligation, or sets forth any just defense". The statute

provides that the trial "shall be conducted as in other cases", but further provides that "the judgment shall not be vacated, nor any execution or levy thereon, set aside, until after a trial and determination against such obligation, or warrant". Further safeguards are spelled out in the statute and a requirement is made for the posting of security, whereupon "the judgment and execution shall be set aside".

By Title 10 *Del. C.* § 9550 Justices of the Peace are given power to grant new trials in civil cases "if application is made within 15 days from the day of giving any judgment." There is a requirement that "due notice of the granting [of] the new trial shall be given.

Failure of the General Assembly to grant to Justices of the Peace similar or comparable powers in hearing and determining criminal cases is, I think, of significance. I can only comprehend such failure on the part of the General Assembly to grant such powers as indicating that the General Assembly did not want, compare *Appon et al. v. Belle Isle Corp. et al.*, 29 Del. Ch. 122, 142, 143, 46 A. 2d 749, 759 (1946), Justices of the Peace to exercise or have the powers to vacate or set aside a judgment of conviction or to grant new trials in criminal matters. Had the General Assembly desired to grant to Justices of the Peace the power to vacate or set aside a judgment of conviction or to grant new trials in criminal matters, it would have been a simple matter to have enacted statutes comparable to Title 10 *Del. C.* §§ 9549 and 9550.

It has long been established in Delaware that the jurisdiction of Justices of the Peace and the manner of exercising such jurisdiction are entirely statutory; they are without power to act in any matter unless the statutes specifically grant the power to act with respect to such matter. *Carey v. Russel*, 2 Har. 280 (1837); *Draper v. Draper*, 3 Har. 65 (1840); *Hawkins v. Mendenhall*, 3 Houst. 216 (1865);

*Green v. Clawson,* 5 Houst. 159, 161 (1876); *Jones v. Charles Warner Co.,* 2 Boyce 566, 83 A. 131 (1912); *Lawson v. Layton & Layton,* 4 Boyce 91, 86 A. 105 (1913), where the Court held that the parties cannot consent to jurisdiction to be exercised by a Justice of the Peace; *Farrell v. Maryland Credit Finance Corp.,* 2 W. W. Harr. 569, 573, 127 A. 879; *Howell v. Eastburn,* 9 W. W. Harr. 588, 590, 2 A. 2d 899; *Schwander v. Feeney's,* 3 *Terry* 198, 203, 29 A. 2d 369; and *State ex rel. Rockey v. Hatton,* 10 Terry 264, 265, 114 A. 2d 651.

In this last cited case this Court ruled that courts of Justices of the Peace are not courts of general jurisdiction. To the contrary, *Townsend v. Harmon,* 5 W. W. Harr. 562, 171 A. 178, classifies them as courts of limited jurisdiction and *Farrell v. Maryland Credit Finance Corporation,* 2 W. W. Harr. 569, 127 A. 879 and *Howell v. Eastburn,* 9 W. W. Harr. 588, 2 A. 2d 899, "refer to the jurisdiction of such Courts as entirely statutory". Also see *Williams v. Singleton,* 2 Storey 488, 160 A. 2d 376, which likewise holds that Justices of the Peace Courts are courts of limited jurisdiction.

Concluding, in *State ex rel. Rockey v. Hatton,* then Chief Justice Layton observed (10 Terry at 266, 114 A. 2d at 652):

"It is my view of the law that in this State, the Magistrates' Courts while created by Constitution, nevertheless are restricted in their jurisdiction. Accordingly, a *Magistrate has no powers other than those conferred on him by statute * * *."* (Emphasis supplied)

True it is, as was first pointed out, all these cases dealt with the civil side of the jurisdiction of Justices of the Peace; they indicate, however, the attitudes of the Supreme Court and the Superior Court towards the jurisdiction to be exercised and the manner of its exercise on the part of Justices of the Peace, and these cases clearly hold that there must be statutory provision found to support the conduct and actions of Justices of the Peace in the administration of their duties.

If the Supreme Court and the Superior Court are as concerned, as it appears to be in the cited cases, with the conduct of judicial affairs by Justices of the Peace in civil matters, there is all the more reason for our Courts to be concerned with the jurisdiction and exercise of it by Justices of the Peace in criminal matters, where the rights of the State and of accuseds are involved.

In the absence, therefore, of a specific grant of power, such as is found in Title 10 *Del. C.* §§ 9542, 9549 and 9550, relating to civil matters, Justices of the Peace are wholly without power to vacate or set aside a judgment of conviction in criminal matters and to grant a new trial when the defendant has been convicted by his plea of guilty; to hold otherwise would make a mockery of Title 21 *Del. C.* § 708, requiring appeals to be taken within 15 days "from the time of conviction", and the cases cited on page 61, *supra.*

Defendant's counsel cites *State v. Insley*, 1 Storey 196, 141 A. 2d 619 (1958) as authority for what the Justice of the Peace did in December 1961. That case is not authority for what was done by the Justice of the Peace.

I read the case as evidencing concern both by this Court and the Supreme Court for the defendant Insley for her getting a fair trial on the charges made against her, under the circumstances there involved and the case goes no further.

Specifically, I do not find therein that our Supreme Court held that a Justice of the Peace could vacate or set aside a judgment of conviction in a criminal matter and grant a new trial after a defendant has pleaded guilty, been sentenced and has failed to appeal within the time fixed by statute, Title 21 *Del. C.* § 708, for a review of sentence, see cases cited *supra* page 61.

A comparison and study of the facts in the *Insley* case with those presented by the case *sub judice* will readily reveal

that what the Supreme Court did in that case has no pertinency whatsoever to what the Justice of the Peace purported to do in the case at bar. This readily appears from a study of the briefs filed in this Court and in the Supreme Court and which show the issues which were considered.

Mrs. Insley contended before the Superior Court that, while en route to her hearing before a Justice of the Peace, where she was to face charges for driving while under the influence of intoxicating liquor, she had been advised by a State Trooper—who had not been the arresting officer—of her rights at the hearing, to be held on the charges that had been placed against her, and that he used these words:

"You have a choice of pleading guilty and paying a $200.00 fine and $4.50 costs, or of pleading not guilty and risking a fine of $1,000.00 and sentence of thirty days in jail. I advise you to plead guilty. You will get the minimum fine and that will be the end of it."

This language appeared in an affidavit she filed in this Court on the hearing held on her exceptions to the transcript filed in the certiorari proceedings. She did not otherwise challenge the correctness of the transcript of the Justice of the Peace which showed that the Justice of the Peace had acted in all respects as required by our statutes, Title 10 *Del. C.* § 9505. She contended that the Trooper gave her advice as to her rights, which did not appear of record and such advice induced and compelled her to plead guilty by reason of coercion, duress, persuasion and mistake. Mrs. Insley, through counsel, asked this Court to conduct a hearing to determine her allegation that the Transcript of the Record submitted by the Justice of the Peace was insufficient and inaccurate, in that the Trooper's advice did not appear therein.

She further contended that this Court should grant her leave to withdraw the guilty plea she made before the Justice

of the Peace, relying on *State v. Martin*, 68 Vt. 91, 34 A. 40 and *State v. Brown*, 33 N. M. 98, 263 P. 502.

The State's arguments in this Court were (1) that the record of the Justice of the Peace was correct and the certiorari should be denied; and (2) that this Court could not permit her to withdraw her plea of guilty, entered before the Justice of the Peace.

This Court sustained the Justice of the Peace as to the sufficiency and accuracy of the record of the case and overruled Mrs. Insley's exceptions to the record, but then proceeded to rule that under the provisions of 10 *Del. C.* § 542, granting supervisory power to this Court of "all justices of the peace, sheriffs, coroners, clerks and other [state] officers", this Court could permit Mrs. Insley leave to withdraw her plea of guilty and plead not guilty. This Court thereupon held she could withdraw her plea of guilty and then directed the Justice of the Peace to try the case on the merits.

It was from this order that the State appealed.

The State argued on appeal before the Supreme Court that 10 *Del. C.* § 541 was the statute that establishes jurisdiction of the Superior Court, including matters coming before it from Justices of the Peace and that 10 *Del. C.* § 542 was "not a grant of additional jurisdiction", hence the provisions of that statute were not applicable, particularly since the Justice of the Peace was not in the case and it was not contended that any "improper action" had been "taken by the Justice of the Peace".

The complete thrust of the State's argument was:

"The court did not, assuming the unquestioned truth of all matters asserted by the appellee, secure additional authority pursuant to 10 *Del. C.* § 542, to issue the order that the Magistrate permit the plea [of guilty] to be withdrawn."

The Supreme Court, 1 Storey at p. 200, 141 A. 2d at p. 621, ruled this Court should not have entered the order appealed from since—

"The only matter before the court was the validity of the exceptions to the record. * * *."

The Supreme Court noted, I Storey at p. 199, 141 A. 2d at p. 621, that Mrs. Insley's exceptions to the record "did not directly assail the correctness of the record * * *."

The Supreme Court then held, 1 Storey at p. 200, 141 A. 2d at p. 622, that this Court should not have received the statement made by Mrs. Insley as to what the Trooper had stated to her en route to the Justice of the Peace; it then further held (*Id.*) the Superior "Court had no authority to entertain an application to withdraw a plea of guilty entered before a Justice of the Peace".

There was never any question raised in the briefs filed in the Superior Court or in the Supreme Court concerning the power of a Justice of the Peace to vacate a conviction and to change a plea entered before conviction; the question of the existence of such power was never discussed or debated in the briefs.

If any doubt ever existed as to the extent and scope of the holding in *State v. Insley, supra,* it must have been dispelled and clarified by the Supreme Court's pronouncement in *Williams v. Singleton, supra.*

It is clear in the *Insley* case that the Supreme Court did no more than to indicate a procedure to be followed in the facts and circumstances such as were presented by that case.

If it was true—and it later was made to appear—that the Trooper had taken advantage of Mrs. Insley or of the Justice of the Peace in connection with the exercise of his jurisdiction, opportunity should be afforded to the Justice of the Peace to ascertain if Mrs. Insley or he had been imposed

upon and if he had appropriately exercised his jurisdiction, in keeping with his obligation to protect the constitutional rights of that accused. That was the extent of the suggestion made by the Supreme Court.

Certainly, under the facts as presented here in the case at bar, it is clear that defendant's rights had not been prejudiced; what happened in this case was entirely the result of the defendant's exercise of his own judgment. No one imposed on him. It seems clear that in proceeding before the Justice of the Peace on December 27, 1961 the defendant only wanted the opportunity to retry his case anew and asserted his illness as a reason for a new trial, so that he could appeal on the merits.

The *Insley* case cannot be read as generally amending the statutes pertaining to the jurisdiction of criminal cases by Justices of the Peace or as granting powers to Justices of the Peace which they did not theretofore have. This is clear from the language of Chief Justice Southerland in *Williams v. Singleton, supra,* where he aptly pointed out, 2 Storey at p. 491, 160 A. 2d at p. 378, that the effect of Rules adopted by this Court, 10 *Del. C.* § 561(a), governing practices and procedure "are not intended to supercede statutes" or otherwise change the law theretofore effective; see also *Stockman v. McKee et al.,* 6 Terry 274, 287, 71 A. 2d 875 (1950) and compare *Curran v. Wooley et al.,* 9 Terry 214, 222, 101 A. 2d 303 (1954), affirmed 9 Terry 382, 104 A. 2d 771 (1954).

These last three cited cases are clear authority for the proposition that the power vested in this Court, to adopt rules of procedure, civil or criminal, cannot be the basis for any contention that the General Assembly thereby granted this Court, or other Courts, the power to amend or change the law or statutes in other respects. One sufficient reason is that the Rules of Practice, civil or criminal, promulgated by this Court, are not applicable to cases brought and pending before a Justice of the Peace.

An Order may be presented, providing that the Attorney General's Motion to Dismiss the Appeal is granted and that the appeal is dismissed. Such Order should likewise provide that the Justice of the Peace should correct his records of the proceedings against defendant arising out of his arrest about August 18, 1961, so that the proceedings before the Justice, brought about December 27, 1961, will be stricken, compare *Clubine v. City of Merrill, supra.*