## GOOD *v.* STATE

[No. 465, September Term, 1964.]

*Decided August 4, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-BURY, SYBERT and BARNES, JJ.

*Harry E. Taylor, Jr.,* and *Hal C. B. Clagett,* with whom were *Taylor & Waldron* and *Sasscer, Clagett & Powers* on the brief, for appellant.

*Robert F. Sweeney, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Arthur A. Marshall, Jr.* and *Vincent J. Femia, State's Attorney* and *Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

SYBERT, J., delivered the majority opinion of the Court. HORNEY, J., dissents. Dissenting opinion at p. 13, *infra.*

The appellant, Dorothy Good, a Prince George's County licensee under the alcoholic beverages law, was charged in the People's Court for that county in July 1963 with violating Code (1957), Art. 2B, by selling liquor on a Sunday. After three postponements requested by her, or her attorneys, Mrs. Good appeared before Judge McGrath of the People's Court on September 23, 1963, with counsel of her own choice. After waiving a jury trial and electing to be tried by the People's Court she, through counsel, pleaded guilty and was sentenced to pay a fine of $150.00 and costs or, upon default in payment, to serve 60 days in the county jail. The appellant personally paid the fine and costs and was released.

On October 17, 1963, the Board of License Commissioners for Prince George's County, without notice and without a hearing, revoked Mrs. Good's liquor license. On October 24, 1963, she, through her present counsel (who did not represent her in the earlier People's Court proceedings), filed a petition for review of the board's action in the Circuit Court for Prince George's County. In January 1964, Judge Parker of the Circuit Court reversed the action of the board because the revo-

cation had been accomplished without a hearing as required by Code (1957), Art. 2B, sec. 70(a), and remanded the case. The board held a hearing in February 1964 and revoked the license pursuant to Art. 2B, sec. 69(f). This section makes revocation mandatory when a licensee has been convicted twice within a two year period of violating the Sunday sales law (which is Mrs. Good's situation). The board, however, is staying the revocation on a month to month basis pending the outcome of the attack upon her conviction, which is the subject of the appeals now before us.

Subsequent to the abortive revocation of her liquor license on October 17, 1963, Mrs. Good and her new counsel decided to challenge the validity of her plea of guilty of September 23, 1963. However, the time for appeal from the conviction had expired, since Code (1957), Art. 52, sec. 13(b), provides in effect that the right to appeal to the circuit court must be exercised within 10 days from the date of the judgment. The first action taken by present counsel [1] in regard to the guilty plea was the filing of a petition on the equity side of the Circuit Court on October 24, 1963, in which the State of Maryland was named as defendant. The equity court was asked to permit the filing of a belated appeal, or, in the alternative, to set aside the conviction and grant a new trial in the People's Court.[2] It was alleged that the petitioner "did not realize and was not clearly and fully apprised by counsel of the consequences of a guilty plea" in regard to revocation of her liquor license; that she desired a trial on the merits and had a valid defense to the charge; that the guilty plea would not have been entered if she had

---

1. Before present counsel were retained, but after appellant's original counsel had withdrawn, two other attorneys were employed. These attorneys, on October 18, 1963, filed in the Circuit Court a petition for a writ of mandamus in which they requested that the clerk of the People's Court be ordered to note an appeal from the guilty plea. However, it is stated in appellant's brief that present counsel dismissed the petition when the attorneys who had filed it withdrew from the case.

2. Either remedy, if permissible, would have allowed appellant a trial on the merits since under Code (1957), Art. 52, sec. 15, on appeal to the circuit court, there is a trial *de novo* even where there was a plea of guilty below.

known the consequences; and that she did not know an appeal had not been filed until after the time for filing had expired. (It is noted that the petitioner did not allege that she had made any objection when her counsel entered the plea of guilty, or that she had requested counsel to enter an appeal, or that she had attempted to enter an appeal herself.) In November 1963 the Attorney General of Maryland filed a motion raising preliminary objections to the petition, pursuant to Maryland Rule 323, alleging, *inter alia,* that the equity court lacked jurisdiction over the subject matter of the petition.

Before this petition and motion in equity were heard, appellant's counsel filed in the People's Court for Prince George's County on July 16, 1964, a petition seeking a belated appeal to the Circuit Court or a new trial. By this time one of the two attorneys who had represented appellant when the plea of guilty was entered had died. In the petition several allegations were made that did not appear in the equity petition filed in the Circuit Court the previous year. It was alleged that the "guilty plea was entered by counsel over the protest" of appellant and that she had had witnesses present in court who were ready to testify in her defense. It was further stated that on the morning of September 23, 1963 (the date of trial), one of her defense counsel came to her place of business in Brandywine, Maryland, with an associate from his law office and attempted to buy her property, including her liquor license, telling her that if she did not sell she would lose her license. It was also alleged that the attorney had recently acquired an interest in a restaurant in Piscataway, Prince George's County, which needed a liquor license such as the one the appellant had, and that he did not disclose this information to appellant. (We were told at oral argument that the number of liquor licenses in the county was "frozen", but that one other license was available at the time in question.) According to the petition, appellant refused to sell and informed her counsel of her intent not to plead guilty. And it was also alleged that just before entering the courtroom on September 23, counsel told appellant that he might be able to prevent revocation of her license and that he subsequently entered a plea of guilty and left the courtroom. When this petition was heard on July 24, 1964, Judge McGrath

of the People's Court denied the prayers for relief on the ground that he was without authority to grant a belated appeal or a new trial.

On the same day the appellant filed an order for appeal from this denial of relief and the original papers were forwarded by the People's Court to the Circuit Court and were docketed as a criminal appeal. On August 24, 1964, the State's Attorney filed a motion raising preliminary objections to the appeal in which he asserted that the Circuit Court lacked jurisdiction over the subject matter and prayed that the appeal be dismissed.

However, before the criminal appeal was heard, and, in fact, before the State had filed its motion raising preliminary objections, the appellant, on August 11, 1964, filed a petition on the law side of the Circuit Court. By this time the other of appellant's original defense counsel had died. The petition at law prayed for an order granting a belated appeal or a new trial and contained the same allegations made in the petition filed in the People's Court. On August 24, 1964, the State's Attorney filed a motion raising preliminary objections to this petition, asserting that the Circuit Court lacked jurisdiction over the subject matter.

Then in September 1964, the appellant filed a motion to consolidate the three cases (*i.e.,* the petition in equity, the criminal appeal from the denial of the petition filed in the People's Court, the petition at law, and the three motions raising preliminary objections thereto) for a single hearing. In this motion among other things it was stated that "the common law writ of *coram nobis* is available at law or equity in the Circuit Court or in the People's Court as relief to the petitioner in the circumstances set forth in her petitions." Although another judge had signed an order consolidating the cases for a single hearing, when the cases came on for hearing in November 1964 before Judge Powers, they were heard *seriatim* in light of the language of Rule 503, prohibiting the consolidation or joint trial of law actions with equity actions. After the hearings, Judge Powers signed three separate orders: (1) and (2) granting the motions raising preliminary objections in the equity and law cases, and denying the petitions filed in those cases seeking orders permitting the filing of a belated appeal from the

People's Court, or granting a new trial therein, and (3) dismissing the criminal appeal. The appellant appealed from each order and the three appeals are now before us in one record.

With respect to the petitions filed by appellant in the equity and law cases, Judge Powers concluded that even if appellant were able to prove the allegations made in her petitions, the Circuit Court lacked jurisdiction to grant the relief sought. We agree.

The appellant has cited no cases to support her position that an equity court has such jurisdiction and our independent research has not disclosed any. On the contrary, in *Adams v. Commissioners of Trappe,* 204 Md. 165, 102 A. 2d 830 (1954), this Court said (at p. 171 of 204 Md.) : "It is a basic principle that courts of equity have jurisdiction over issues of property and the maintenance of civil rights, and do not interpose their aid in matters merely criminal which do not affect any rights of property. * * *" In *Clark v. Todd,* 192 Md. 487, 492, 64 A. 2d 547 (1949), we observed that equity will enjoin the commission of a crime only when the criminal offense is primarily and essentially an injury to property, and then only within the same limits as where the element of criminality is entirely absent. And in *Chappell v. Stewart,* 82 Md. 323, 325-326, 33 Atl. 542 (1896), we quoted with approval a passage from *Kerr on Injunctions,* pp. 1-2, which read in part: "* * * A Court of Equity has no jurisdiction in matters merely criminal or merely immoral, which do not affect any right to property. * * * The Court has no jurisdiction to restrain or prevent crime, or to enforce the performance of a moral duty * * * or for the purpose of giving a better remedy in the case of a criminal offense * * *." As the Supreme Court of Pennsylvania said in *Cooper v. McDermott,* 159 A. 2d 486, at 489 (1960) : "Equity's jurisdiction does not involve control of the prosecution, punishment and pardon of crimes or misdemeanors. (Citing cases.) These important functions, for most compelling reasons and sound public policy, are performed exclusively in courts exercising criminal jurisdiction." See also *McClintock, Equity* (Hornbook Series, 2d ed.), sec. 173. In the case before us, if the equity court had granted the relief sought, it would have been tantamount to an assumption of the administration of criminal jus-

tice. The only alleged injury sustained by the appellant is the loss of her liquor license. This is only an indirect incident or result of her conviction, comparable, to a degree, with a defendant's loss of elective franchise upon conviction of a felony. In fact, Code (1957), Art. 2B, sec. 72, provides that "Licenses issued under provisions of this article shall not be regarded as property or as conferring any property rights." Under the circumstances here presented, equity cannot interfere in the criminal case in order to consider whether relief would be appropriate in the incidental matter. Although equity courts have enjoined the enforcement of judgments of justices of peace, *e.g., Wilmer v. Picka,* 118 Md. 543, 85 Atl. 778 (1912) ; *Horner v. Popplein,* 112 Md. 591, 77 Atl. 252 (1910), such cases were civil in nature. Finally, it is well established that an equity court will not take jurisdiction of a case merely because if it does not do so no other remedy will be available, *Chappell v. Stewart, supra;* 1 *Pomeroy, Equity Jurisprudence* (4th ed.), sec. 424, footnote 1, and that where an appeal was available to test the legality or regularity of a proceeding, relief must be sought in that manner. *U. S. F. & G. Co. v. Taylor,* 136 Md. 545, 549, 110 Atl. 883 (1920) ; *Hazlehurst, et al. v. Mayor & C. C. of Baltimore, et al.,* 37 Md. 199, 220 (1872).

In regard to the action at law the appellant cites no authority for the proposition that a circuit court sitting as a law court has jurisdiction to grant a belated appeal or new trial in a criminal case disposed of by a people's court or a magistrate. The right of appeal from these inferior tribunals granted by Code (1957), Art. 52, sec. 13(b), *supra,* is to the criminal side of the circuit court. A civil law court has no jurisdiction in a criminal case. The appellant relies on Code (1957), Art. 2B, sec. 192, to support her contention that the Circuit Court sitting as a law court has jurisdiction to give relief. That section gives the circuit courts of the counties jurisdiction over liquor law violations concurrent with trial magistrates, but this contemplates the circuit court sitting as a criminal court and is thus of no aid to the appellant's position.

We come now to the criminal appeal. As noted earlier, the appellant filed a petition for a belated appeal or a new trial in

the People's Court and when the petition was denied she appealed to the Circuit Court, where the appeal was dismissed.

The appeal was not from the judgment of conviction itself, but from Judge McGrath's denial of the petition on the ground that the People's Court lacked authority to grant either form of relief prayed. The State challenges the appeal to this Court as one from final action of the Circuit Court in its limited appellate jurisdiction on appeal from a magistrate or people's court as provided by Code (1957), Art. 52, sec. 13(b), *supra*. We find it unnecessary to decide the right to appeal because we think it desirable and in the public interest that the case should be reviewed, as permitted in such a case by Code (1957), Art. 5, sec. 21. Hence we treat the appeal as an application for *certiorari*, grant the application and decide the case. *Moulden v. State*, 217 Md. 351, 142 A. 2d 595 (1958) ; *Shipley v. State*, 201 Md. 96, 93 A. 2d 67 (1952).

The correctness of the Circuit Court's denial of relief in the criminal case depends upon whether or not the People's Court had the power to grant a belated appeal or a new trial. By Ch. 675 of the Acts of 1961 (codified as Code (1964 replacement volume), Art. 52, secs. 25B, 98A, 99, 119(k) and 125A), the Legislature established the People's Court for Prince George's County under the authority of sec. 41B of Art. IV of the Constitution of Maryland, which gave the General Assembly the power by law to establish such courts in the counties and incorporated cities of the State (except Baltimore City), and to prescribe and from time to time to alter, *inter alia*, their powers, duties, jurisdiction, and the right of appeal therefrom. Chapter 675 invested the judges of the People's Court for Prince George's County with all the authority, powers, and civil and criminal jurisdiction theretofore vested in the justices of the peace designated as trial magistrates and other justices of the peace of the county. It also gave such judges the power to suspend or reduce (within certain limitations) the sentence and/or costs in any case within their jurisdiction within ten days after judgment has been pronounced (increased to thirty days by Ch. 255 of the Acts of 1965). See Art. 52, sec. 99, *supra*. Hence, the effect of Ch. 675 was to bring the judges of the People's Court for Prince George's County within the purview

of sec. 13 of Art. 52, *supra,* which specifies the jurisdiction and powers of the trial magistrates of the State in criminal matters, and permits an appeal from their judgments to the circuit court only within ten days from the rendition of the judgment.

It is clear, therefore, that while the People's Court for Prince George's County was created under constitutional authority, its jurisdiction and powers are purely statutory. And it is conceded in the case before us that the Legislature has made no specific grant of power to the People's Court for Prince George's County, or to the trial magistrates or justices of the peace of the State, to vacate or set aside a judgment of conviction and to grant a new trial, or to permit an appeal after the statutory period has elapsed. However, the appellant argues that language in Art. 52, sec. 13(a), to the effect that trial magistrates "have power * * * to do all acts which may be necessary for the exercise of their said jurisdiction, and may pronounce judgment and sentence in all such cases coming before them, in the same manner, and to the same extent as the circuit courts for said counties could, if such cases had been tried before said courts * * *", constitutes a sufficient basis for the finding of such power. But the same theory was considered and rejected in *State v. Jacob,* 234 Md. 452, 455-457, 199 A. 2d 803 (1964). In that case then Chief Judge Brune, for the Court, concluded that the quoted phraseology did not confer upon the trial magistrates of Anne Arundel County the power to grant probation without verdict. The decision was based largely upon the fact that "when the Legislature has wished to confer upon justices of the peace or trial magistrates the power to grant probation without verdict, it has done so specifically." Similarly, in the instant case, although the Legislature gave to the judges of the People's Court for Prince George's County the power to suspend or reduce sentences within ten (now thirty) days after their imposition, as previously noted, it has not seen fit to confer upon them the power to grant new trials or to permit belated appeals. Indeed, this Court held more than a century ago that because of such a lack of statutory authority, justices of the peace had no authority to strike out their own judgment, once entered, and grant a new trial. *Frazier v. Griffie,* 8 Md. 50, 55 (1855). The rule is thus stated by a respected Maryland au-

thor: "It is the general rule that Justices have the power to strike out judgments only in jurisdictions where they may grant new trials. Justices in Maryland have no power to grant new trials, and their judgments once entered, are final, unless appealed from." Thomas, *Procedure in Justice Cases* (2nd ed.), sec. 78. See also *State v. Stoesser*, 183 A. 2d 824 (Del. Super. 1962). And the same lack of statutory authority has over the years prevented belated appeals from justices of the peace, trial magistrates, and the people's courts.

Appellant informs us that the People's Court for Prince George's County has adopted its own rules of procedure, under the authority of Code (1964 replacement volume), Art. 52, sec. 99(b), and that rule No. 1 provides that the "Maryland Rules of Procedure, 1961, and the Local Rules of the Circuit Court of Prince George's County, 1962, in so far as the same are applicable or can be consistently applied, are hereby adopted and made a part hereof * * *." The appellant then argues that Rule 764 b of this Court is applicable to her situation. That rule provides, in part, that a trial court "shall have revisory power and control over" a judgment entered for 90 days after imposition and that after such period has expired the court "shall have revisory power and control only in case of fraud, mistake or irregularity".

Rule No. 1 of the People's Court is not in the record, and therefore the issue is not properly before us. This Court does not ordinarily take judicial notice of the rules of the lower court. *Eisenberg, Admin. v. Air Cond., Inc.*, 225 Md. 324, 333, 170 A. 2d 743 (1961). In any event, the argument is without merit. While the People's Court for Prince George's County was authorized to adopt certain procedural rules, it has no power to adopt a rule to change the ten day statutory time for appeal. We have held that a circuit court under a statutory provision which gives it the power to promulgate its own rules of procedure cannot validly adopt a rule which is inconsistent with a general rule of practice or procedure or which is inconsistent with a statutory or constitutional provision. *Bastian v. Watkins, Clerk*, 230 Md. 325, 331, 187 A. 2d 304 (1963); *Laurel Canning Co. v. B. & O.R.R.*, 115 Md. 638, 642, 81 Atl. 126 (1911). It follows that *a fortiori* an inferior tribunal cannot do so.

12

We conclude that we must hold, as we do upon the basis of the authorities cited, and particularly upon the rationale of *State v. Jacob, supra,* that in the absence of a specific statutory grant of authority, the judges of the People's Court for Prince George's County are without power to vacate a judgment of conviction, once entered, and to grant a new trial, or to authorize the taking of an appeal from their judgments subsequent to the statutory ten day period. The remedy provided by law to the appellant, who admitted in her petitions that her counsel informed her before trial that conviction would cause her to lose her liquor license, and who then stood silent when a plea of guilty was entered on her behalf, and who paid the fine imposed, without protest, was by appeal to the Circuit Court within ten days.

Appellant argues that the People's Court had jurisdiction to issue a writ of error *coram nobis,* and that that court should have treated her petition for a new trial or a belated appeal as an application for such a writ. As pointed out in *Madison v. State,* 205 Md. 425, 432, 109 A. 2d 96 (1954), the writ of error *coram nobis* is a common law writ, available in both civil and criminal cases, without limitation as to time, to bring before the court facts which were not brought into issue at the trial of the case, and which were material to the validity and regularity of the proceedings, and which, if known by the court, would have prevented the judgment. In England, the writ of *coram nobis* was a common law writ which issued out of the Court of Chancery to the Court of King's Bench, a common law court. We have found no authority for the proposition that at common law in England a justice of the peace had authority to issue such a writ. Our research has revealed that in this country only two jurisdictions have stated that statutory courts have the power to issue this common law writ in the absence of specific statutory authorization. In California, an intermediate appellate court held, in *People v. Superior Court,* 82 P. 2d 718 (Dist. Ct. of App. 1938), that a petition for a writ of error *coram nobis* filed in a police court should be treated as a motion to vacate a judgment previously entered. But in Maryland, as we have seen, the inferior tribunals do not have the power to vacate or strike out their judgments, once entered. In *Hogan*

*v. Suprme Court,* 65 N. E. 2d 181 (1946), involving a writ of prohibition, the Court of Appeals of New York observed that an inferior court—not a court of record—had power to entertain *coram nobis* applications as an incident to its jurisdiction over certain crimes. With all due respect to that eminent Court, however, we believe that in Maryland a statutory court is not empowered to issue the common law writ of *coram nobis,* in the absence of express legislative authority, and we so hold. Cf. *State v. Stoesser, supra.*

We note that relief under the Uniform Post Conviction Procedure Act, Code (1964 Cum.Supp.), Art. 27, secs. 645A, *et seq.,* even as amended by Ch. 442 of the Acts of 1965, is not available to appellant since she is not incarcerated or under probation or parole. If the truth of the allegations in the appellant's petitions be assumed, it would appear that there is no adequate judicial remedy for the wrong of which the appellant complains, but, as was said in *Keane v. State,* 164 Md. 685, 694, 166 Atl. 410 (1933), "this Court cannot create a remedy where none exists, since its function is to discover and apply existing law and not to make new law."

*Orders affirmed, with costs.*

HORNEY, J., filed the following dissenting opinion.

The majority, despite eminent authority to the contrary,[1] which they declined to follow on the theory that a statutory court is not empowered to issue the common law writ of error *coram nobis,* in my opinion, have indubitably denied the appellant her fundamental right to due process. To me it is incredible that a people's court established by law pursuant to constitutional authority does not have power to issue a writ of error *coram nobis* in a proper case to review its own judgment as to an alleged error of fact in order to determine whether or not the judgment should be vacated as void.[2]

---

1. See the decision of the Court of Appeals of New York in Hogan v. Supreme Court, 65 N. E. 2d 181, and the subsequent reference thereto in this dissenting opinion.

2. The purpose of the writ of error *coram nobis,* as stated in Keane v. State, 164 Md. 685, is not to permit a review of the evi-

14

The explicit holding [3] of the majority to the effect that the People's Court of Prince George's County was without power to vacate a judgment of conviction and to grant a new trial in the absence of specific statutory authority to do so is based primarily on the cases of *State v. Jacob,* 234 Md. 452, 199 A. 2d 803 (1964) and *Frazier v. Griffie,* 8 Md. 50 (1855). Neither of these cases is in point and both are distinguishable from the case at bar. The *Jacob* case is distinguishable in that we were *there* concerned with the statutory power of a trial magistrate to grant probation in a criminal case without verdict which (as therein stated) was essentially a question of jurisdiction. *Here,* however, we are concerned with the inherent power of all courts (including courts which are not of record) to issue a writ of error *coram nobis* for the purpose of considering facts material to the validity and regularity of the trial, which, had they been known to the court at the time, would have prevented entry of the judgment of conviction. The *Frazier* case, cited by the majority for the proposition that a justice of the peace has no authority to strike out a judgment once entered and grant a new trial, is at least distinguishable in that we are concerned here, not with a justice of the peace of the old school, but with a modern people's court within the trial magistrates system created under constitutional authority and possessing statutory power "to do all acts which may be necessary for the exercise

---

dence given in connection with the issues actually tried but to determine whether facts existed which were unknown to the court at the trial, and were not in issue under the pleadings, but which, if known, would have prevented the judgment. See also Bernard v. State, 193 Md. 1; Madison v. State, 205 Md. 425.

3. Although the record contains three appeals, there is but one basic question — whether or not the People's Court of Prince George's County lacked power to issue a writ of error *coram nobis.* The majority ruled, as did the lower court, that the Circuit Court for Prince George's County, either at law or in equity, could not decide the question under the pleadings presented. As to this, there is no disagreement. Nor is there disagreement that this Court had the power to decide the question treating the appeal (from the Circuit Court in its appellate capacity) as an application for *certiorari.* But this member of the Court does not agree that the People's Court was without power to issue a writ of error *coram nobis* under the extraordinary facts and circumstances of this case.

of [its] jurisdiction * * * in the same manner, and to the same extent as the circuit courts" have power to do. Code (1957), Art. 52, § 13(a).

In any event, even if there is no fundamental difference in the powers of inferior courts under the old and new magisterial systems, the *Frazier* case, as well as the Delaware case of *State v. Stoesser,* 183 A. 2d 824 (1962), also cited by the majority, are clearly distinguishable from the case at bar in that both of those cases involved situations in which the judgments previously entered had been stricken out or set aside merely because the justices (who had no power to correct an issue of fact wrongly determined and adjudicated) were of the opinion that the judgments were erroneous, while in the case at bar, if it is assumed that the alleged facts are true, it is apparent that the People's Court had power to vacate the void judgment and proceed as though no judgment had ever been entered. See *Clübine v. City of Merrill,* 163 Pac. 85 (Or. 1917); *State v. Stoesser, supra;* 51 C.J.S., *Justices of the Peace,* § 113.

In my opinion, the contention of the appellant that the People's Court had power under the facts and circumstances of this case to issue a writ of error *coram nobis,* and that that court should have treated her petition for a new trial as an application for such a writ, was correct. Even though the statute does not in terms expressly authorize the court to issue the writ, there is, on the contrary, nothing to preclude the court from so doing in a proper case. Likewise, although there is no case law in this State on the question one way or the other, the appellate courts in two other jurisdictions have held that tribunals which are not courts of record nevertheless have power to issue the common law writ of error *coram nobis.* In *Hogan v. Supreme Court,* 65 N. E. 2d 181 (1946), the Court of Appeals of New York, after stating that a court not of record or continuing jurisdiction was not debarred from entertaining a *coram nobis* application when no other remedy is available to vacate a judgment which was void because of fraud, held that the refusal of a court of special sessions to deal with the matter by way of *coram nobis* would deprive the appellants of their constitutional rights to due process. In *People v. Superior Court,* 82 P. 2d 718 (Cal. Dist. Ct. of App. 1938), where a writ of error *coram*

*nobis* is treated as a motion to vacate a judgment and the question was whether a police court had power to consider such a writ, the District Court of Appeals held that where fraud or other facts overriding the free will and judgment of a defendant is involved, and no statutory remedies are available, he was entitled to the common law remedy of a writ of error *coram nobis* in order to withdraw a guilty plea and have his case heard on the merits.

Without attempting to consider the merits of the appellant's claim (which is first a matter for the People's Court to consider) that she was the victim of a fraud, mistake or irregularity arising out of the conduct of her counsel in that he had led her to believe (despite her desire to plead not guilty) that she might be able to prevent revocation of her liquor license by pleading guilty to a charge of selling whiskey on Sunday, it is apparent to me that the consecutive adverse rulings of the People's Court, the Circuit Court and the majority of this Court to the effect that the People's Court had no power to issue a writ of error *coram nobis,* absent express statutory authority to do so, to vacate what may well be a void judgment of conviction, has not only foreclosed [4] the appellant from having the case heard on the merits, but has deprived her of the constitutional right to due process.

The case, in my opinion, should be remanded to the People's Court to the end that it may issue a writ of error *coram nobis* for the purpose of inquiring whether or not the judgment of conviction was void because of fraud or other valid reason.

---

4. The appellant is foreclosed from pursuing the usual statutory remedies because her right to enter a direct appeal has expired and because the right to post conviction relief was never available to her since she was fined and not imprisoned.